## Wax et al. v. Wax et al.

214

*Edward Unterberger,* for plaintiffs.

*Lemuel B. Schofield* and *W. Bradley Ward,* for defendants.

CRUMLISH, J., September 21, 1951.—The above matter is before us on preliminary objection to bill in equity.

According to the bill, Abraham Wax, on October 27, 1938, executed an irrevocable deed of trust to Moe Wax and George L. Rubens, as trustees (son and son-in-law, respectively, of settlor and defendants herein), transferring to the trustees certain shares of stock of the Keamco, Inc.; Stamco, Inc.; Royal Amusement Company and a 25 percent interest in the partnership conducted under the firm name of Stratford Amusement Company, to manage and supervise all property comprising the corpus of the trust, collect the income, issues, profits and accretions, and to pay the net income, issues and profits and discharge the principal of the trust to the cestuis que trustent therein named (relatives of settlor by blood or marriage) in various proportions.

The deed of trust provided, inter alia:

"Thirteenth: Trustees shall have - - - - - the following powers:

"(j) To subscribe for stock or bond privileges and to join in any merger or reorganization affecting investments which may be a part of this trust, and to vote the said shares of stock in any manner as to them may seem desirable.

"(k) The Trustees shall have full power and authority to vote as stockholders of the corporations whose stock forms part of this trust, to have themselves elected as officers and directors thereof, to receive salaries and bonuses or other compensation, as may be duly voted or agreed upon by the directors of the said corporations, with the further express authority on the part of said Trustees to vote upon motions concerning the amount and payment of salaries payable to them as officers, directors, or employees of the said corporations, and to receive such salaries as may be paid by said companies without restriction as to amount."

The shares of stock transferred to the trustees amounted to exactly 50 percent of the shares of the stocks of the corporations mentioned therein, and the other 50 percent of the stock was and is owned by Morris Wax and Gertrude Wax, his wife, who are officers and directors of the corporations. The corporations own and operate motion picture theatres in the City of Philadelphia.

About 1940 the directors of the corporations, including defendants, voted to defendants salaries of $13,000 each from the corporations, and a salary of $26,000 to Morris Wax, which were reduced in 1950 to $11,700 for each of the defendants and $23,400 to Morris Wax.

Up to and including the year 1940, the theatres operated successfully and produced sufficient revenues to pay the salaries and a surplus for the cestuis que trustent.

As of September term, 1946, no. 3664, certain interested parties filed a petition in the Court of Common Pleas No. 3 for a declaratory judgment as a result of a dispute which arose with regard to the validity of the deed of trust. As of September term, 1946, no. 3670, a bill in equity was filed in Court of Common Pleas No. 1 by and against parties interested questioning the validity of, and powers conferred by, a certain management contract held by Morris Wax with Keamco, Inc., and Stamco, Inc. As of June term, 1948, no. 3121, a bill in equity in Common Pleas Court No. 5 was filed as a result of other disputes among the parties interested. Abraham Wax died intestate on August 6, 1940, and letters of administration were granted to his widow, Malke Wax. For a reason which does not clearly appear from the record, Anna Wax Kurland filed a petition in the orphans' court in Philadelphia County to vacate the administratrix's

discharge. Malke Wax died March 16, 1948, intestate, a resident of the State of New Jersey.

All the aforesaid litigation was finally settled by a written agreement executed December 30, 1948, and hereinafter referred to, which agreement was signed by plaintiffs and defendants and everybody interested in the trust.

The bill further alleges that defendants informed plaintiffs that for the years 1949 and 1950 the profits from the operation of the corporations were barely sufficient to pay the salaries of defendants and Morris Wax and that there was no surplus to pay any moneys to the cestuis que trustent. And further, that there is no reasonable expectancy that the cestuis que trustent will receive any income whatever.

It is further alleged "That the deed in trust intended that all the parties mentioned therein were to be beneficiaries thereunder and were to receive income therefrom and that it was not the intent of the settlor that the defendants should be the sole beneficiaries thereunder." And that "Morris Wax did agree as a director of the said corporation to reduce his salary to an amount by which both the defendants would reduce their salary so that a fund may be created for the purpose of making payments to the other parties under a deed of trust" but that defendants refused to reduce their salaries accordingly; that the salaries for services performed by defendants should properly be $3,000 for Moe Wax and $7,800 for George L. Rubens.

Plaintiffs therefore pray:

(a) That defendants be discharged as trustees under the deed of trust and that substitute trustees be appointed;

(b) or that defendants be directed to reduce their salaries as aforesaid;

(c) or that the trustees be directed to sell the corpus of the estate and to make distribution thereof in accordance with the deed of trust.

218

(d) such other and further relief as the Court may deem meet.

The objections to the bill are:

1. That this is in effect a stockholders' bill, and there is a failure to comply with the requirements of Rule 37 of the Rules of Equity Practice.

2. (a) Plaintiffs, as cestuis que trustent, do not have the standing to challenge salaries paid officers of corporations, the shares of stock of which form the corpus of the trust estate.

(b) Plaintiffs' interpretations of the trust instrument is contrary to the unambiguous terms thereof.

(c) The terms of the trust instrument expressly authorize plaintiffs "to have themselves elected as officers and directors. . . . to receive salaries and bonuses or other compensation as may be duly voted or agreed upon by the directors of the said corporations. . . . without restriction as to amount" and to vote the shares of stock of the corporation "in any manner as to them may seem desirable."

3. That this court is without authority to interfere with the internal management of the two corporations whose stock is held in part as an asset of the trust under the circumstances.

4. Plaintiffs are guilty of laches.

The question involved may be stated thus: Where the corpus of a trust estate consists of shares of stock of corporations, and the trustees are authorized to be elected as directors and officers thereof, and to vote and receive salaries therefrom, without restriction as to amount, and it appears that the salaries are in amounts that diminish or prevent the payment of any income to the cestuis que trustent, do the cestuis que trustent have the standing in the absence of fraud, to invoke a decree of a court of equity to reduce the salaries without first applying to the internal manage-

ment of the corporations, and without joining the corporations as defendants, and where the cestuis que trustent have, in unambiguous language, in an express attempt to put an end to litigation arising out of interpretation of the deed of trust and certain management agreements of the corporations, acquiesced in the terms of the trust agreement?

To answer this question requires the consideration of a number of component factors: (1) Is a beneficiary of a trust fund, the corpus of which consists of shares of stock of corporations, in the same position as a stockholder with regard to questioning the payment of salaries to officers of the corporations? If so, is it necessary to first apply to the internal management of the corporations for the correction of the evil of which complaint is made? Further, in such an action, is it necessary to join the corporations as party defendants? And, finally, are plaintiffs bound by the settlement agreement of December 30, 1948?

It is the duty of directors to fix compensation of officers and employes. Where the directors vote themselves salaries as officers of a corporation, a stockholder has the right to object, but he must first bring his objection before the directors at a meeting of that body. If the directors fail to take satisfactory action thereon, then the stockholder may resort to a court of equity. However, "the bill must show an effort to secure plaintiff's rights through meetings of the corporation". (Wolf v. Pa. R. Co., et al. 195 Pa. 91 (1900)), and this is the requirement of Rule 37, Rules of Equity Practice.

"The generally accepted rule, applicable to such cases, is that the voting of a salary or compensation to a director, who either is, or is not, an officer of the board, must be entirely free from fraud, actual or constructive, and that the action is illegal, if it is determined by the vote of the director, or officer, whose salary is

220

thus increased": Schaffhauser v. Arnholt & Schaefer Brewing Company, 218 Pa. 298-301 (1907).

"A director cannot contract with a corporation when its interests conflict with his private interests. His action in such cases, however, may be accepted or rejected at the option of the corporation. If he has contracted with himself the corporation may deem it expedient and to its interest to approve and accept his action. This is frequently done and this the corporation has the authority to do. On the other hand, the corporation clearly has a right to repudiate his act when for any reason it desires to do so. It follows, therefore, that the act is voidable at the election of the corporation": Russel v Henry C. Patterson Company 232 Pa. 113-120 (1911).

Are plaintiffs occupying the position of stockholders who are bound to meet the aforementioned requirement? We think not. They are one of a number of beneficiaries under the Wax deed of trust, and by no stretch of the imagination can they be considered stockholders in the ordinary acceptance of that term. They have a right however, to question the dealings of the trustees when they believe that they dealt with the corporations to their own advantage, not as stockholders, but as cestuis que trustent. As we read the bill, that is in effect what they are doing; they contend that the trustees are "appropriating to themselves all the advantages and profits of the said trust estate to the exclusion of the other parties mentioned in the said deed of trust". In other words, by voting themselves salaries in the amounts presently received by the trustees, they are preventing the payment of income to the plaintiffs.

Our next inquiry is as to the conduct of defendants in voting themselves salaries as officers of the corporations. Have they gained an advantage from their position as trustees by fraud or bad faith? The mere alle-

gation that defendants "have violated and are violating the trust imposed upon them under such deed of trust by appropriating to themselves all of the advantages and profits of said trust estate to the exclusion of the other parties mentioned in said deed of trust" standing alone is not sufficient. Neither does a reading of the other allegations of the bill separately or collectively strengthen plaintiffs' position. For all we know, the compensation paid to defendants as officers of the corporations is fair and reasonable compensation for the services rendered by them to the corporations, and there is nothing to show that even if the salaries of defendants were reduced to the amounts requested by plaintiffs, the corporations would pay dividends, which is a question to be determined by the board of directors. On this subject, it may be observed the salaries have been paid from 1940 down to the time of the filing of the bill, without complaint on the part of any interested party. Also, plaintiffs are merely two of the income beneficiaries, and entitled to a comparatively small part of the income from the trust. Furthermore, all of the other income beneficiaries are apparently satisfied with the salaries as paid. And finally, when we take the admitted facts of the case, we do not see how the plain effects of the instrument can be avoided if there is to be any protection whatever given to legal rights. As before mentioned, in paragraph 13 (*j*) and (*k*) of the original deed of trust, as ratified by the agreement of 1948, defendants were specifically entitled to salaries without restriction as to amount. These salaries were fixed by not only their own vote, but also the votes of three other directors, one of whom was the Hon. Louis E. Levinthal, a totally disinterested person. Under these circumstances, in the absence of any allegation of fraud, or of facts which would put the burden on defendants as trustees, of defending their rights to salaries which are alleged to be excessive, the provi-

sions of the deed of trust as to the paying of salaries to defendant is controlling.

A most important thing in the case is the written settlement agreement of December 30, 1948, which is made a part of plaintiff's bill. This agreement was signed by plaintiffs, defendants and every other party remotely interested in the matter. It was not a loose or unimportant instrument; it was a final settlement of all disputes arising in the matter of the trust and its importance can be judged by the fact that $32,500 in counsel fees were agreed to be paid to counsel representing the various interests. It starts off:

"1. The parties recognize the validity of the deed of trust of Abraham Wax, dated October 27, 1938 and agree that it is in all respects a valid and subsisting instrument binding on the parties hereto and in full force and effect according to its terms and provisions except as modified by the provisions hereinafter set forth."

It recites that there had been extensive litigation in the courts of common pleas and orphans court on the subject of the trust and that there was the desire of the parties to settle all disputes existing between and among them. It provides for the discontinuance of all prior litigation, and by section 5 provides that certain sections of the deed of trust shall be inoperative, not, however, including section 13($j$) and ($k$) of the original deed of trust, which is therefore expressly ratified by section 1 of the amending agreement. Section 15 of the agreement of 1948 provides that there shall be an equality of salaries as between defendant and Maurice Wax, just as there had been in the past. Nowhere is there a provision directing salaries to be reduced in proportion to the earnings of the corporations. If there had been any intent to reduce the salaries based on a falling off of business of the corporations, it would naturally have been made a part of section 15.

It is therefore clear that the intent of the parties as determined by a "consideration of the surrounding circumstances, the situation of the parties, the objects they apparently have in view and the nature of the subject matter" must govern this case. The instruments under consideration contain provisions which give defendants the right to receive such salaries as are duly fixed by the board of directors of the corporations; it was in the original deed of trust and was ratified by all the parties, including plaintiffs, in the agreement of 1948.

Defendants' preliminary objections are sustained in accordance with this opinion and leave is granted to plaintiffs to amend their bill to show a cause of action within 20 days hereof, under penalty of having it dismissed.