Edward Wolf *v.* The Pennsylvania Railroad Company, The Philadelphia and Erie Railroad Company, Frank Thomson, President of The Pennsylvania Railroad Company, and N. P. Shortridge, President of The Philadelphia and Erie Railroad Company, Appellants.

*Corporations—Suit by stockholder to enforce corporate right—Equity— Pleading.*

In a suit in equity by a stockholder in his own name to enforce a corporate right, there must be averred and proved an actual application to the directors, and a refusal by them to bring suit or to allow plaintiff to do so in the corporate name, and where misconduct of the directors themselves is alleged, the bill must show an effort to secure plaintiff's rights through meetings of the corporation.

A bill in equity by a stockholder of a leased railroad against the lessee company alleging false and erroneous accounts rendered by the lessee to the lessor, is demurrable where it does not appear that the complainant received any permission to sue in his own name, or made any effort to obtain such permission, and where it does not appear from his bill that he ever communicated any fact either to the directors or shareholders of the lessor, whereby it appeared that any of the accounts were erroneous or false in fact. A mere averment that as the lessee owned a majority of the stock of the lessor, and elected its officers who allowed themselves to be "kept in absolute ignorance of its business," is insufficient.

In an equity suit brought by a stockholder of a leased railroad without permission of his company against the lessor and the lessee, alleging fraud and collusion between the officers of the two companies, the complainant cannot avoid the remedy provided by an arbitration clause in the lease by charging that not only would the officers of both companies collusively select referees favorable to the lessee, but that the referees so selected would "decide any dispute which has heretofore, or may hereafter arise in favor of the lessee without regard to the facts involved."

*Railroads—Lease—Arbitration clause.*

An arbitration clause in a railroad lease which provides that in case of dispute each party "shall select a referee of experience and skill in railway management, and the said referees shall select another of like skill and experience," is lawful, and is not rendered illegal by the fact that the lessee is the owner of a majority of the stock of the lessor company.

*Railroads—Lease—Fraud—Equity.*

A railroad lease executed after the lessee had acquired the majority of stock of the lessor, and ratified with knowledge of that fact by a large majority of the other stockholders, and not questioned by such other stockholders during a period of more than twenty-seven years, will not be set

aside by a court of equity on complaint by a single stockholder or even a considerable minority, where the specific causes of complaint set out do not clearly appear to be fraudulent, even though so charged in general terms, and are quite as consistent with the exercise of an honest but different judgment.

*Equity—Laches—Corporation—Railroads—Lease.*

A stockholder of a leased railroad who has filed a bill in equity, without permission of his company, is guilty of laches where it appears that the lease which he attacks was made in 1870; that he did not acquire stock until 1892; that he did not file his bill until 1898, and that during the whole period from 1870 to 1898, the management of the lessee road had been satisfactory, so far as appears, to all parties except the complainant.

Argued Jan. 8, 1900. Appeal, No. 217, Jan. T., 1899, by defendants, from decree of C. P. No. 2, Phila. Co., Dec. Term, 1897, No. 968, pro confesso, for want of an answer. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Bill in equity for an account.

Demurrer to bill.

The bill averred that on January 6, 1862, the Philadelphia and Erie Railroad Company leased its railroad to the Pennsylvania Railroad Company at a time when the latter company owned a majority of the stock of the former company; that on January 1, 1870, another lease was made which provided that the lessee should operate the road of the lessor, and out of the receipts to pay all operating expenses and fixed charges, and should account to the lessor for the surplus of the gross receipts of the lessor's lines. The bill further charged that the officers of the lessor company were elected by the lessee company, and that from 1870 down to the filing of the bill they had been acting in collusion with the lessee company in fraudulently manipulating the accounts so as never to show any surplus of gross receipts. Other averments of the bill are set forth at length in the opinion of the Supreme Court.

The bill prayed for an accounting from 1870 to the date of the filing of the bill. It was subsequently amended so as to limit the accounting from the year 1894.

The court overruled the demurrer, and subsequently entered a decree pro confesso against the defendants for want of an answer.

*Errors assigned* were (1) in not dismissing the bill; (4) in entering a decree pro confesso.

*David W. Sellers,* for appellant.—The complainant had no standing to institute the suit: Taylor on Corporations, sec. 138; Hawes v. Oakland, 104 U. S. 50; Detroit v. Dean, 106 U. S. 537.

The clause of arbitration is an essential part of the contract. Courts always maintain them: Navigation Co. v. Fenlon, 4 Watts & Serg. 205; Reynolds v. Caldwell, 51 Pa. 298.

The bill in its charging part fails to state any substantive facts constituting a grievance of which this court can make examination, and the use of the words " unjustly acting in collusion," " for the purpose of defrauding," and the like, are of no significance: Magniac v. Thomson, 2 Wallace, Jr. 209.

*James W. M. Newlin,* for appellee.—The agreement for an arbitration of future dispute, the arbitrators not being named therein, does not oust the jurisdiction of the court: Gray v. Wilson, 4 Watts, 41; Horton v. Stanley, 1 Miles, 418; Mentz v. Armenia Fire Ins. Co., 79 Pa. 480.

The bill is a general stockholders' bill and filed in strict accordance with the case of Hawes v. Oakland and kindred cases.

The plaintiff was sufficiently exact in his statement of objections to the account furnished. He was prevented giving more detailed information by the fraud of the two appellants in collusively depriving him of this information.

OPINION BY MR. JUSTICE MITCHELL, March 12, 1900:

In January, 1870, the Pennsylvania and the Philadelphia and Erie Railroad Companies which had been operating together under an arrangement made in 1862 entered into an agreement of lease, with specific provisions for monthly and annual accounts by the former, as operating lessee, and for the mode of settlement of differences which should arise upon matters in relation to the lease.

In February, 1892, the plaintiff bought stock in the Philadelphia and Erie Company, and in February, 1898, he filed the present bill charging the lessee company with fraudulent retention of the income and profits of the lessor, manipulation of the accounts so as to conceal the real facts, improper control of the

lessor company by means of ownership of a majority of the shares of stock, excessive charges for its own services, and other illegal conduct, and finally charging the plaintiff's own company, the lessor, with fraudulent collusion in the matters complained of. The bill then asks for accounts of a large number of matters from 1870 to 1896, inclusive, the appointment of a receiver and the payment to him by the lessee of the surplus receipts, overcharges, etc., when ascertained.

The bill being demurred to was amended by setting forth the date of plaintiff's purchase of his stock, and limiting his prayers for account to the years 1894–1896, instead of 1870–1896. The demurrer to the amended bill was overruled and judgment entered pro confesso for default of answer.

The first matter for consideration is the status of the plaintiff to maintain such a bill. It is a bill to assert rights of the corporation, and therefore must ordinarily be brought by the corporation itself. The right of an individual stockholder to act for the corporation is exceptional and only arises on a clear showing of special circumstances, among which inability or unwillingness of the corporation itself, demand upon the regular corporate management, and refusal to act are imperative requisites. And the refusal by the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment, a nonperformance of a manifest official obligation, amounting to a breach of trust: Beach on Private Corporations, sec. 878. There must be averred and proved an actual application to the directors, and a refusal by them to bring suit or to allow plaintiff to do so in the corporate name, and where misconduct of the directors themselves is alleged, the bill must show an effort to secure plaintiff's rights through meetings of the corporation: Beach, secs. 882, 885. "The shareholder should set forth in his bill the efforts that he has made to induce the corporation to act in the matter, should allege its refusal or failure to sue," and "facts showing that he has left undone nothing which in reason he might have done to prevail on the corporate management to bring the action:" Taylor on Corporations, secs. 138, 140. See also Morawetz on Corporations, secs. 241, 244.

In these requirements the bill admittedly fails. But plaintiff relies on his averments of collusion by the directors of the

lessor company to excuse the absence of demand upon them. The authorities are agreed that if it sufficiently appears that a demand would be useless, it need not be made : Beach, sec. 886. The averments of collusion relied on by plaintiff are that as the lessee is the owner of a majority of the shares of the lessor, the former elects and controls the action of the officers of the latter, who have, therefore, allowed themselves to be " kept in absolute ignorance of its business." The defect of this charge is that it does not rest on any acts averred, but on an inference that by reason of the circumstances of their election, the directors will violate their duty and commit a breach of trust. There is, however, no presumption that officers will commit a breach of trust; the charge should rest on some act, affirmative or permissive, manifestly in violation of duty, and manifestly the result of fraud and not of erroneous judgment. The bill is radically defective, first, in not averring demand and refusal by the corporate officers to bring suit, and secondly, in not averring facts sufficient to excuse the want of such demand, and to meet the requirement that plaintiff must show every reasonable effort to get the corporation to act. The defect in this respect is explicitly set forth in paragraph seven of the demurrer: " That it does not appear from said bill that the complainant has ever communicated any fact to the directors at any of their meetings, or to the shareholders at any of their meetings, whereby it appeared that any of the monthly or annual accounts received from the Pennsylvania Railroad Company under said lease were erroneous or false in fact, nor does it appear that he has ever requested either to proceed to have an accounting on the basis of erroneous accounts rendered."

But there is a still further defect in the bill of the same nature. The lease of 1870 provides : " Ninth. That if any difference shall arise in relation to this contract and lease between the parties hereto, each shall select a referee of experience and skill in railway management, and the said referees shall select another of like skill and experience, and the three so chosen shall hear and decide such differences," etc. The bill aims to avoid the necessity for first seeking relief in the way thus expressly agreed upon, by charging that not only would the officers of both companies collusively select referees favor-

able to the lessee, but that the referees so selected, and assumedly the third referee chosen by them, would " decide any dispute which has, or may hereafter arise, in favor of the lessee without regard to the facts involved." Equity does not act on such strained and reckless assumptions of fraud in future conduct with no substantial basis of facts to rest upon.

Plaintiff further charges that " under the circumstances now existing between the lessor and lessee, and the lessee controlling the lessor, he is advised by counsel and charges that the said clause of the lease is nugatory." The justification for such advice is not disclosed, and is certainly not apparent. The agreement for reference is lawful, and the bill itself affords ample evidence that the nature of the subjects to be included in the accounts is such as to require handling by a referee or other person " of experience and skill in railway management."

On the first ground of consideration, therefore, the bill wholly fails to bring the case within the exception which permits an individual stockholder to maintain an action to enforce the general corporate rights.

Secondly, the plaintiff in February, 1892, bought stock in the lessor company, and made further purchases in 1893 and 1894. He did not file his bill until 1898, and then he demanded an accounting back to 1870. The date was subsequently amended so as to begin in 1894, but the original demand is significant of the reckless disregard of important facts with which the whole bill is framed. His excuse that he did not know of the matters complained of until 1894 is, under the circumstances, altogether too vague. He practically admits that he has no real knowledge now. The management that he attacks is prima facie in entire compliance with the agreement of 1870, and had been running, so far as appears, satisfactorily to all parties for twenty-two years before he became interested and twenty-eight before he filed his bill. The duty of a stockholder to move promptly was not met, and the bill might well have been dismissed for laches.

But thirdly, passing by the subordinate questions of parties and delay of seeking relief, the bill has no substantial foundation of fact to rest upon. It is filled with charges of fraud and collusion, but they are charges as inferences from very insuffi-

cient averments of facts. If we take out what Chief Justice GIBSON called the vituperative epithets, there is nothing left but the inference of fraud drawn from the general averment that the officers of the lessor company, being elected by the vote of the stock held by the lessee, are under the latter's influence. It is admitted that the accounts called for by the agreement of 1870 have been regularly furnished, that neither directors nor stockholders have been asked to investigate the good faith of these accounts, or furnished with any information which should induce them to do so. And so far as it is not a fishing bill for some ulterior purpose not disclosed, the real attack it desires to make is on the lease of 1870. This crops up at various places in the bill, and notably in the clause in paragraph sixteen: "Your orator further shows that if the lessor were not controlled by the lease of January 1, 1870, which was fraudulently fastened upon it by the lessee owning a majority of the lessor's stock, that the lessor could at Williamsport deliver all the freight by the lessor's company to that point to the Philadelphia and Reading Railway system, by which means it could deliver all its freight and would receive from the Philadelphia and Reading Railway system a proportion of the through joint freight receipts, based upon an equal ton mileage ratio."

The learned judge below took this view of the bill in reference to which he said: "The plaintiff's bill, however, when closely scrutinized, rests upon a somewhat different ground. His real contention is that he is a minority stockholder of the Philadelphia and Erie Railroad Company; that the majority stockholder is the Pennsylvania Railroad Company, which practically controls the Philadelphia and Erie Railroad Company, and that all the methods of protecting the interests of the stockholders of the Philadelphia and Erie Railroad Company, provided for by the contracts between the two companies, are inadequate and illusory, because their execution has been rendered impossible by the failure of parties.

"The thought at the bottom of the bill, therefore, is that the acquisition of a majority of the stock by the Pennsylvania Railroad Company in itself operated to give to the minority stockholders, when dissatisfied, a right to come into court, and averring with as much precision as practicable why and how their

reasonable expectations of profit have not been realized, demand an account upon general equity principles, and not upon the basis of contract." He therefore concluded, though apparently not without hesitation, that the averments of fraud in the bill were sufficiently direct and specific to be sustained on demurrer.

This view, however, fails to give their due weight to the facts that the lease of 1870 was made after the lessee had acquired the majority of stock in the lessor; was ratified with knowledge of that fact by a large majority of the other stockholders, and has not since been questioned by any of such other stockholders during a period of more than twenty-seven years. Contract rights and the judgment of the majority are not to be lightly set aside on complaint by a single stockholder or even a considerable minority, where as here the specific causes of complaint set out, do not clearly appear to be fraudulent, even though so charged in general terms, and are quite as consistent with the exercise of an honest though different judgment.

Decree reversed, demurrer sustained and bill dismissed with costs.