685 A.2d 119

**Reverend David Ross DRAIN and Reverend Michael Shea, on behalf of themselves and all others Similarly Situated, Appellants**

**v.**

**COVENANT LIFE INSURANCE COMPANY, Robert W. Kloss, Robert Lauterbach, William A. Pollard, Philip C. Herr, II, Leonard McCandless, George Jenkins, Eugene M. Twardowski and Provident Mutual Life Insurance Company of Philadelphia.**

Superior Court of Pennsylvania.

Argued May 14, 1996.

Filed Sept. 27, 1996.

Reargument Denied Dec. 9, 1996.

144

Kenneth A. Jacobsen, Haverford, for appellants.

Lewis R. Olshin, Philadelphia, for Covenant Life Ins. Co., etc., appellees.

Laurence Z. Shiekman, Philadelphia, for Provident Mutual Life Ins. Co., appellee.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine whether the trial court erred in dismissing the complaint of Reverend David Ross Drain and Reverend Michael Shea upon the preliminary objections filed by Provident Mutual Life Insurance Company ("Provident") and Robert W. Kloss, Robert Lauterbach, William A. Pollard, Philip C. Herr, II, and Leonard McCandless (collectively, the "Individual Defendants"). This appeal by Reverends Drain and Shea requires us to consider, *inter alia*, the following primary questions: (1) Do the Courts of Common Pleas have jurisdiction over a claim alleging corporate-control torts in connection with a merger of mutual insurance companies, or is such a claim within the exclusive jurisdiction of the Insurance Commissioner? (2) Do plaintiffs in a derivative action challenging a merger lose their standing to maintain the action upon consummation of the merger where the disposition of their interests in the old corporation was invol-

untary and was related to allegedly illegal acts of the defendants? (3) Does a trial court abuse its discretion by denying leave to amend an initial complaint where amendment would be neither illegal nor significantly prejudicial, where it is not manifestly unlikely that an opportunity to amend will be fruitful, and where the trial court does not provide reasons on the record for its denial of leave to amend? Based upon our disposition of these questions as set forth in this Opinion, we vacate the judgment, reverse the order dismissing the complaint, and remand the matter for further proceedings consistent with the Opinion.

Reverends Drain and Shea filed class and derivative action claims in the Court of Common Pleas of Delaware County challenging the merger of Covenant Life Insurance Company ("Covenant") and Provident. Drain and Shea were policyholders of Covenant, which was formed to secure the relief of Presbyterian Ministers in 1717. Covenant focused throughout its 277–year history on providing low-cost basic insurance products to the clergy. Covenant was able efficiently to provide such insurance to its policyholders as a result of the homogeneous lifestyle and mortality characteristics of Covenant's policyholder base. These economies also permitted Covenant to pursue conservative investment strategies and resulted in accumulation of a substantial surplus, which in turn permitted further reduction in policyholder insurance costs and increased opportunities to provide Covenant policyholders with dividends. Generally speaking, the rights of Covenant's policyholders were similar to those held by policyholders of other mutual life insurance companies.

Individual Defendant Kloss, then President and Chief Executive Officer of Covenant, announced in early October of 1993 that Covenant had signed a letter of intent to merge with Provident. Provident filed an Application and Request for Approval of a Merger with the Pennsylvania Insurance Department on March 21, 1994. The merger proposal was submitted to a special meeting of Covenant's policyholders on July 25, 1994. With less than one-fourth of eligible policyholders voting, Covenant's policyholders approved the merger by a

substantial margin, 13,873 to 1,630. The Pennsylvania Insurance Commissioner issued an order approving the merger on September 28, 1994. Drain and Shea filed a class and derivative action complaint approximately one week later. In their complaint, in Count I, Drain and Shea derivatively seek equitable relief and damages for alleged breach of fiduciary duty and waste of corporate assets, and, in Count II, they seek relief for alleged fundamental unfairness of the merger. On October 11, 1994, Drain and Shea filed a Petition for Preliminary Injunction to delay the consummation of the proposed merger. After extensive hearings before the Honorable Joseph P. Cronin, the Petition for Preliminary Injunction was denied. Upon receipt of the approval of the California Department of Insurance (required by the fact that certain policyholders of the companies were California residents), the merger was consummated on October 31, 1994. Provident and the Individual Defendants filed preliminary objections to the class and derivative action complaint. The trial court, by an order dated December 22, 1995, sustained these preliminary objections and dismissed the complaint with prejudice. This appeal followed.

"In an appeal from an order sustaining a preliminary objection in the nature of a demurrer, our scope of review is plenary[;] preliminary objections which result in the dismissal of the suit or the denial of the claim should be sustained only in cases which are clear and free from doubt." *Ham v. Sulek,* 422 Pa.Super. 615, 622, 620 A.2d 5, 8 (1993). Further, "the facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences as may be drawn from such facts." *Mellon Bank v. Fabinyi,* 437 Pa.Super. 559, 567, 650 A.2d 895, 899 (1994). Importantly,

preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer. In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit

recovery. If there is any doubt, it should be resolved by the overruling of the demurrer.

*Id.* at 567–68, 650 A.2d at 899 (citations omitted); *Ham, supra,* at 622, 620 A.2d at 9 ("The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible."). The complaint in this case includes a derivative claim for breach of fiduciary duties and waste of corporate assets (Count I) and a class claim for fundamental unfairness under the Business Corporation Law asserting certain common law and contract rights (Count II). We consider the trial court's disposition of these claims in reverse order.

■ Jurisdiction over the class claim asserted in Count II is vested in the Courts of Common Pleas by 15 Pa.C.S. § 1793, which provides that "[u]pon application of any person aggrieved by any corporate action, the court may hear and determine the validity of the corporate action." Such jurisdiction is, however, circumscribed by the jurisdiction of the Insurance Commissioner under 15 Pa.C.S. § 3138, which provides that § 1793 "shall not be applicable to an insurance corporation insofar as inconsistent with the jurisdiction of the insurance department." This provision is made applicable to Covenant by 15 Pa.C.S. § 3102, which defines "insurance corporation" as "a domestic business corporation that is engaged in the business of writing insurance … and is subject to regulation by the insurance department."

The trial court sustained the demurrer to Count II on the basis of its ruling that it lacked subject-matter jurisdiction over the class claim. The court reasoned as follows:

Pennsylvania law clearly provides that the Insurance Commissioner alone has the jurisdiction to assess the fairness to policyholders of a merger involving an insurance company, pursuant to 42 Pa.C.S.A. 763(a). In order to merge, Pennsylvania law required that Covenant Insurance Company and Provident Mutual Life Insurance Company obtain authorization from the Insurance Commissioner. *See* 40 Pa. C.S.A. § 991.1402(h)(2). The Insurance Commissioner has exclusive statutory jurisdiction to determine whether a pro-

posed merger of Pennsylvania-domiciled insurance corporations is fair to the policyholders of the merging entities and can disapprove a proposed merger if she finds the proposed merger is unfair to such policyholders. *See* 40 Pa.C.S.A. § 991.1402(f)(1)(iii–iv) (Supp.1994). The Commissioner is specifically granted the authority to determine whether the plan to merge "jeopardizes the financial stability of the insurer or prejudices the interests of its policyholders" or whether the plan to merge is "unfair and unreasonable to policyholders of the insurer and not in the public interest." See [*Id.* ].

\* \* \* \* \* \*

As is reflected in the Insurance Commissioner's Order approving the merger, the Commissioner reviewed the extensive materials provided by Provident and Covenant and made the determination that the proposed merger was fair to the policyholders of the two companies and that the merger could proceed. The identical fairness issues that Plaintiffs seek to challenge in this Court have already been considered, adjudicated and rejected by the Insurance Commissioner and, thus, are not properly before this Court. Opinion, *supra,* at 4–5.

While we are not aware of any Pennsylvania decisional precedent guiding this Court as to the specific interpretation of the statutes governing this issue, consideration of applicable precedent from other jurisdictions and of the role of the Insurance Commissioner in reviewing the merger that is the subject of this action indicates that the trial court's conclusion was in error.

Covenant's Amended and Restated By–Laws establish Covenant policyholders as "members" of Covenant, a mutual insurance company, with such rights as attend mutual insurance company membership, including control rights. 1993 Covenant Life Insurance Company By–Laws § 3.1 at 1. This gives the policyholders the status of shareholders under the Business Corporation Law. *See* 15 Pa.C.S. § 2124 (describing voting rights of members of mutual insurance companies);

and § 1103 (defining "shares" as "units into which the rights of shareholders to participate in the control of a corporation ... are divided"). The economic interest Drain and Shea seek to protect via the class claim is a corporate ownership interest, namely, a value corresponding to the amount of reduction in insurance premiums and the amount of any special distributions or dividends attributable to the surplus (and certain other corporate characteristics) possessed by Covenant at the time of the merger. The conduct challenged includes alleged self-dealing and breaches of fiduciary duties in the procedure and substance of the merger; the class claim thus focuses on issues of corporate governance. The Insurance Commissioner's own analysis of the jurisdictional status of this claim, while not binding on this Court, is instructive:

> The [Insurance] Commissioner is generally charged with administering "the laws of the Commonwealth in relation to insurance." 40 P.S. § 41. Such authority will necessarily extend to issues of corporate governance to the extent such issues peculiarly affect "the laws of the Commonwealth in relation to insurance." However, all issues of corporate control do not come within the ambit of the Insurance Department merely because an insurance company is involved. Activities of insurance companies that follow from the corporate form of doing business, but which are not intrinsic to the business of insurance, are not properly before the Commissioner. For this reason, the Associations Code provides that the jurisdiction regarding issues of corporate action is vested in the courts of common pleas and is only divested "insofar as inconsistent with the jurisdiction of the Insurance Department." 15 P.S. 1793 and 3138.
>
> The nature of corporate activities which may be subject to Department oversight ought to be given a liberal interpretation to assure compliance with the insurance laws. The Commissioner surely has greater control over the governance of a mutual insurance company, as opposed to a stock company, given that such a business corporation is unique to the insurance industry. However, the allegations of the Presbytery, even if true, are not directed to any particular

insurance laws. Rather, the allegations go to the propriety of corporate action and the possibility of a monetary claim against the company. Such issues are generally considered to be within the jurisdiction of the courts of equity. (footnote omitted). Administrative agency jurisdiction is premised on the assumed agency expertise in its particular field. The Department has no particular expertise in matters of corporate action.

This is not to say that the allegations of impropriety are not to be taken seriously. The Commissioner does not, in any way, diminish the importance of resolving these issues. Rather, it is the Commissioner's assessment that she simply lacks the authority to adjudicate the issues as presented to her by the Presbytery.

Opinion of the Insurance Commissioner, dated September 28, 1994, at 7–8 (denying Presbytery of Philadelphia request for hearing in connection with Covenant–Provident merger).

While we are aware of no guiding Pennsylvania authority concerning this jurisdictional issue, we are aware of two cases from other jurisdictions that involved similar issues. *See Rowen v. LeMars Mutual Insurance Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975); *Doyle v. Union Ins. Co.*, 202 Neb. 599, 277 N.W.2d 36 (1979). The *Rowen* case involved allegations of a series of corporate-control torts by insiders that occurred during a change of control over a mutual insurance company. An Iowa statute provided for review of insurance company control transactions by the insurance commissioner for, *inter alia*, unfairness to policyholders. The transaction at issue in *Rowen*, however, antedated the effective date of this statute, and thus "was not subject to scrutiny and possible disapproval by the commissioner." *Rowen, supra*, 230 N.W.2d at 910. The Iowa Supreme Court, however, noted the following:

In addition, even if the statute were then applicable, the role of the insurance commissioner is limited to disapproval of the control transaction on the specific grounds provided. He is not granted authority to adjudicate the torts alleged in this case, nor is he authorized to award damages. It is true he may disapprove a control transaction when he finds

it is unfair or unreasonable to policyholders. Thus, as an incident of his powers he may provide a preventative administrative remedy for the wrongs alleged in this case. However, the statutory power to disapprove a control transaction is a limited power. It is not a legislative delegation to the insurance commissioner of jurisdiction over corporate insider torts, even though the commissioner is granted administrative authority to disapprove control transactions when such wrongs appear.

*Id.* at 911. As in the instant case, the questions involved in *Rowen* were "not technical insurance regulatory matters," did not involve "administrative discretion or uniformity," and did not require "expertise of the insurance industry" for their resolution. *Id.* at 912.

The *Doyle* case involved a sale of a mutual insurance company to a newly-created stock insurance company via a contract of bulk reinsurance. A governing Nebraska statute required filing with and approval by the Nebraska Director of Insurance, approval by a majority of stockholders, and "distribution to each policy holder of the ceding company of his equity in the surplus funds ... as determined under a fair and equitable formula approved by the Director." *Doyle, supra,* 277 N.W.2d at 39. The Director's review of the contract included review for fairness and equity to the policyholders of each insurer. *Id.* The Nebraska Supreme Court held that the statute did "not abrogate the common law duties of corporate directors to policyholders of a mutual insurance company and that approval of the contract by the Director of Insurance [did] not insulate the directors of the company from liability for violation of their fiduciary duties." *Id.* at 40.

*Moy v. Schreiber Deed Security Co.,* 392 Pa.Super. 195, 572 A.2d 758, *appeal denied,* 525 Pa. 647, 581 A.2d 573 (1990), a case cited by the trial court in support of its jurisdictional conclusion, actually emphasizes the error of that conclusion. *Moy* involved an objection to title insurance fee rates, approved by the Insurance Commissioner, brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. This Court required the complainants to bring their

case before the Commissioner rather than the courts because they were "aggrieved by an action of the Commissioner [, *i.e.*, approving the rate manual]." *Moy, supra*, at 201, 572 A.2d at 761. The Court further noted that such jurisdictional requirements "accord[ed] [the Commissioner] the first opportunity to apply her expertise." *Id.* The other cases cited by the trial court in this context have a similar characteristic distinguishing them from the instant case: these cases involve matters clearly within the expertise of the Commissioner, not corporate governance torts that fall, by the Commissioner's own judgment, outside of that expertise. *See, e.g., Genkinger v. City of New Castle*, 188 Pa.Super. 229, 146 A.2d 640 (1958). In a case such as the instant case, where the wrongs alleged are corporate-control torts incident to a merger of mutual insurance companies, we cannot conclude that assertion of jurisdiction by the courts is inconsistent with the jurisdiction of the Insurance Commissioner. We hold instead that a court is the proper forum for adjudication of such claims; for this reason, the portion of the trial court's order sustaining the demurrer to Count II of the complaint is reversed.

■ We now proceed to consideration of the trial court's disposition of Count I of the complaint. The trial court sustained Provident's and the Individual Defendants' preliminary objection to Count I, a derivative claim against the Individual Appellees, on the following grounds: (1) Drain and Shea lack standing to bring a derivative claim on behalf of Covenant as their ownership interests in Covenant were eliminated when the merger was consummated; (2) Drain and Shea failed to meet the requirements for bringing a derivative claim in that they failed to allege that they made a demand on the Covenant board to stop the merger and failed in the alternative to allege facts sufficient to demonstrate that such demand would have been futile.

The trial court employed the following analysis in determining that Drain and Shea lacked standing to maintain a derivative claim:

Under Pennsylvania law, a shareholder bringing a derivative suit must be a current shareholder, a shareholder at the

time of the alleged wrong as well as throughout the litigation. *See*, Pa.R.Civ.P. 1506(a)(3)(i); *Scattergood v. Perelman*, 945 F.2d 618, 626 (3d Cir.1991) (interpreting Delaware law). At the time they filed their Complaint, Plaintiffs were policyholders of the former Covenant. Now that the merger of Covenant and Provident has been consummated, Plaintiffs are no longer policyholders of Covenant, but are now policyholders of the remaining company, Provident. As such, Plaintiffs do not have standing to maintain a derivative action on behalf of Covenant.

\* \* \* \* \* \*

The Delaware courts require not only that a plaintiff be a shareholder at the time of the challenged transaction, but also that a plaintiff remain a shareholder at the time of the filing of the suit and throughout the litigation. *Kramer v. Western Pacific Indus., Inc.*, 546 A.2d 348, 354 (Del.1988); *Lewis v. Anderson*, 477 A.2d 1040, 1041 (Del.1983); *Bonime v. Biaggini*, 1984 WL 19830, at \*2 (Del.Ch. Dec. 7, 1984) (where entity surviving merger is new and different enterprise which has succeeded to property rights of merged firm, derivative plaintiff's standing is extinguished with merger). "This requirement ensures that the plaintiff has sufficient incentive to represent adequately the corporation's interests during litigation." *Blasband v. Rales*, 971 F.2d 1034, 1041 (3d Cir.1992). . . .

Opinion, *supra*, at 8–10. While Pennsylvania Rule of Civil Procedure 1506(a) does address the requisites to bring a shareholder derivative action, it does not resolve the issues before us. The rule provides, in pertinent part, the following:

(a) In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth

\* \* \* \* \* \*

(3) either (i) that each plaintiff was a stockholder or an owner of an interest in the corporation or other entity at the

time of the transaction of which he complains or that his stock or interest devolved upon him by operation of law from a person who was a stockholder or owner at that time. . . .

The 1990 Explanatory Comment to the rule states, however, that "[t]he rule makes no statement with respect to continuing ownership subsequent to the commencement of the action." The Explanatory Comment further notes that the 1990 amendment to the rule was designed to "bring the Pennsylvania procedure in line with its Federal counterpart" by requiring ownership at the time of initiation of suit, as the Pennsylvania courts had not previously done. Pa.R.C.P. 1506, Explanatory Comment (1990).

While it is clear that the amendment of Rule 1506 does not decide the issue, we believe that the trial court's exclusive consideration of Delaware law led to an incorrect interpretation of Pennsylvania law in this instance. Courts applying the federal counterpart to Rule 1506, Federal Rule of Civil Procedure 23.1, have found derivative standing where the following three elements are present: "(1) plaintiffs' disposition of the stock was involuntary; (2) the disposition was related to the allegedly illegal acts of defendants; and (3) the remedy sought would result in plaintiffs regaining shareholder status." *Arnett v. Gerber Scientific, Inc.*, 566 F.Supp. 1270, 1273 (S.D.N.Y.1983) (applying F.R.C.P. 23.1); *see also Keyser v. Commonwealth Nat. Financial Corp.*, 120 F.R.D. 489, 493 (M.D.Pa.1988) (applying F.R.C.P. 23.1 and finding standing despite absence of third *Arnett* factor). A seminal case in this area is that of *Miller v. Steinbach*, 268 F.Supp. 255 (S.D.N.Y. 1967). After reviewing Pennsylvania law, the United States District Court for the Southern District of New York reasoned as follows:

It would appear to me that a grossly inequitable decision would be reached if I were to hold that a merged corporation and/or its shareholders are barred from suing where the very merger itself took place because of the allegedly wrongful activities of the directors of the old corporation and the management of the surviving corporation among

others. (citations omitted.) To hold that the surviving corporation inherits a derivative right of action where said corporation has wrongfully taken part in the very acts complained of would be to reach an incongruous and highly inequitable result.

268 F.Supp. at 267. Following this line of reasoning, the *Keyser* court added that

> [p]laintiffs will be afforded the opportunity to prove that [the surviving entity] participated in wrong doing during the [merger] and related events. Conversely, if plaintiffs are unable to establish at trial any wrongdoing on the part of [the surviving entity], or if they are unable to raise a material fact on that issue in the face of a dispositive motion . . ., it would appear that the right to bring a derivative suit had passed to [the surviving entity] upon consummation of the merger and that plaintiffs had, at that point, lost their standing to pursue the derivative action.

*Keyser, supra,* at 493. The *Keyser* court also described a logical corollary to this analysis; namely, that where a challenged merger is the subject of a claim of fraud, any monetary recovery would flow directly to the shareholders and not the surviving entity (in the event that the old corporation was not restored). *Id.* This, of course, eliminates in such circumstances the prime reason for the continuous ownership rule applied by the trial court in the instant case—that "a non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately." *Overberger v. BT Financial Corp.,* 106 F.R.D. 438, 442 (W.D.Pa.1985). The trial court noted that even the more stringent standing requirements of Delaware law include an exception for cases where "the merger was merely a device to eliminate the derivative claim." Opinion, *supra,* at 10 (citing *Lewis, supra,* 477 A.2d at 1047 n. 10). While Drain and Shea have not alleged that this was the case here, they do allege that Provident participated in a plan to steal Covenant from its policyholders. This allegation is sufficient at the demurrer stage to meet the less specific requirement established by the federal cases discussed above,

namely, the requirement that the disposition of the ownership interests of Covenant's policyholders was "related to the allegedly illegal acts of defendants." *Arnett, supra,* at 1273.

In addition to the "litigation incentive" justification however, the continuous ownership rule, as the trial court noted, is also sometimes justified by reference to the desire to avoid the "abuses associated with derivative actions." Opinion, *supra,* at 10. The most common such abuse is a shareholder "strike" suit, an action designed to obtain large counsel fees or a private settlement but not to benefit the corporation. Such actions inefficiently interfere with the most fundamental aspects of the corporate form to the detriment of both the corporation and (the majority of) its shareholders. The divergence in judicial approaches to the competing equities, interests and policies involved in suits such as the instant one demonstrates that such suits require careful balancing.

We believe that the *Miller–Keyser* approach to balancing the interests of allegedly aggrieved shareholders and the corporate interest in efficient execution of control transactions is the superior one: the summary judgment and trial stages of a proceeding challenging the propriety of corporate action in an allegedly fraudulent merger are better arenas for disposition than the demurrer stage. The "litigation incentive" problem is solved as a general matter by the fact that a derivative suit seeking, as does the present action, to unravel a merger provides the prospect of tangible relief to the plaintiff, while the *Miller–Keyser* "flow-through" affords sufficient incentive to a plaintiff not seeking to unravel the transaction. We note that in the instant case the complaint may be read to seek an unravelling of the Covenant–Provident merger, and further that the Insurance Commissioner caused the merger to be structured in such a way as to make this possible, *see* Opinion of Cronin, J., filed November 16, 1995, at 7–8. To the extent that such relief is unavailable, the *Miller–Keyser* approach to damages will provide Drain and Shea with sufficient incentive vigorously to pursue the suit. We therefore hold that, under Pennsylvania law, plaintiffs Drain and Shea did not lose standing to maintain their derivative action where the involun-

tary disposition of their interests in Covenant was allegedly the result of the defendants' wrongdoing in the challenged merger.

For the foregoing reasons, we reverse the part of the order of the trial court dismissing Count I of the complaint on the grounds that Drain and Shea lack standing to maintain a derivative action.

 We now turn to the trial court's determination that Drain and Shea failed sufficiently to allege demand or futility of demand. Rule 1506 of the Pennsylvania Rules of Civil Procedure provides, in pertinent part, the following:

> In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth ... the efforts made to secure enforcement by the corporation or similar entity or the reason for not making such an effort.

There is no allegation in the complaint that any demand was made on the Covenant (or, for that matter, the Provident) board concerning the merger. Thus, under Pennsylvania law, Drain and Shea were required to allege in their complaint particularized facts demonstrating that any such demand would have been futile. *Garber v. Lego*, 11 F.3d 1197 (3d Cir.1993) (interpreting Pennsylvania law). Such allegation of futility requires an allegation that a majority of the board of directors that took the challenged action (or failed to take action) committed manifest fraud and were not simply guilty of erroneous judgment. *Wolf v. Pennsylvania R.R. Co.*, 195 Pa. 91, 45 A. 936 (1900); *Garber, supra*, at 1203; *see also Evans v. Diamond Alkali Co.*, 315 Pa. 335, 172 A. 678 (1934); *Kelly v. Thomas*, 234 Pa. 419, 427, 83 A. 307, 309 (1912). This interpretation of Rule 1506 comports with the policy advanced by the Rule, namely that " '[t]he right of the individual shareholder to act for the corporation is exceptional and only arises on a clear showing of special circumstances, among which inability or unwillingness of the regular corporate manage-

ment, and refusal to act, are imperative requisites.'" *Garber, supra,* at 1202, quoting *Wolf, supra,* at 94, 45 A. at 936.

The trial court found insufficient allegation of futility in this case, reasoning as follows:

> At all relevant times prior to the merger, the Covenant Board consisted of thirteen directors, all of whom voted in favor of the merger. Plaintiffs' Complaint accuses only five members of the Board of wrongdoing, specifically, Robert W. Kloss, Robert E. Lauterbach, William A. Pollard, Philip C. Herr, II, and Leonard H. McCandless. In addition, Plaintiffs' accusations of self-dealing involve only four of these five members of the Board. Thus, even based on Plaintiffs' own allegations, a majority of Covenant's former Board—eight members—were not involved in any of the alleged inappropriate conduct, and thus, Plaintiffs cannot argue that demand should have been excused due to fraudulent acts of a majority of the Covenant Board of Directors.

Opinion, *supra,* at 13–14. The court further noted that the "conclusory contention that Defendant Kloss 'dominated' the other Board members, without more, cannot serve as a substitute for the pleading of facts sufficient to show that a majority of the Board allegedly engaged in fraud." *Id.* at 14, n. 7. Drain and Shea contend that the allegations of the complaint are sufficient, citing the following litany as demonstrative:

> The Complaint specifically and repeatedly alleges that Covenant's entire "Board of Directors" (in *addition* to the persons sued as named defendants in this case) actively participated in the series of events giving rise to this litigation, including the unceremonious dissolution of the Board of Corporators; the undisclosed amendment to Covenant's by-laws to transfer power to themselves; the unilateral cancellation of the meeting at which the policyholders were to vote on the Directors; the total abdication of their responsibilities to appellee Kloss and others who were plagued with flagrant conflicts of interest; their cancellation of the merger when Kloss was not going to receive the compensation package to which he felt entitled, and complete reversal of position only a day later when Kloss got what he wanted;

the direct financial benefits which they were to receive if, but only if, the merger went through; the material facts omitted from the Joint Proxy Statement and the blatant deficiencies in the proxy notification program; and the undue reliance on advisors with patent conflicts of interest, and the inexcusable failure to seek or obtain independent legal and financial advice.

Reply Brief of Appellant at 9.

■ Close reading of the complaint, however, reveals that many of these allegations go not to any fraudulent nature of acts by a majority of the board but instead represent only recitations of actions taken by the board, *e.g.*, dissolution of the Board of Corporators, Complaint, ¶¶ 3, 35, and withholding and granting recommendations during Kloss's negotiations with Provident, *id.* ¶¶ 53–55. Others simply describe situations where the board was allegedly "bullied," *id.*, ¶ 51, or "dominated," *id.*, ¶ 74(d). Allegations that board actions amounted to improper financial self-aggrandizement are also flawed: director perquisites accompanying corporate transactions do not excuse a failure to make a demand unless such perquisites are extraordinary or lavish. *See In re Westinghouse Securities Litigation,* 832 F.Supp. 989 (W.D.Pa.1993). Also insufficient are the allegations contained in ¶¶ 74(b) and (d) of the complaint that demand was futile because pursuit of litigation by the directors would have amounted to the directors suing themselves. *See Garber, supra,* at 1205–06. Finally, the allegation that the board failed to obtain an outside fairness opinion on the proposed merger is insufficient to establish fraudulent conduct on the part of the board. *See generally Smith v. Van Gorkom,* 488 A.2d 858, 876 (Del.1985). Drain and Shea have simply failed to allege with particularity facts linking the overt conduct of the Covenant board with fraudulent intent or activity of a majority of that board. Under such circumstances we cannot find error in the trial court's decision to sustain the demurrer to Count I of the complaint.

Drain and Shea also contend, however, that the trial court committed reversible error in not granting leave to amend the allegations of the derivative claim to address any deficiency in the allegation of futility. Drain and Shea did seek leave to replead regarding futility of demand in the event that the allegations of the complaint were found insufficient in that respect. Plaintiffs' Answer to the Individual Defendants' Preliminary Objections to the Complaint, filed February 3, 1995, at 9. The decision to grant or deny leave to amend a pleading is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Junk v. East End Fire Dep't.*, 262 Pa.Super. 473, 396 A.2d 1269, 1277 (1978). In this instance, while the trial court made clear, by dismissing the complaint with prejudice, that it denied the request for leave to amend, the court gave no indication of its reasons for so doing.

> Where the initial pleading reveals that the complaint's defects are so substantial that amendment is not likely to cure them, and that prima facie elements of the claim or claims asserted will not be established, the right to amend is properly withheld.

*Feingold v. Hill*, 360 Pa.Super. 539, 550, 521 A.2d 33, 39, *appeal denied*, 515 Pa. 607, 529 A.2d 1081 (1987). On the other hand, "[a]mendments should be allowed with great liberality at any stage of the case unless they violate the law or prejudice the rights of the opposing party." *Gutierrez v. Pennsylvania Gas & Water Co.*, 352 Pa.Super. 282, 507 A.2d 1230, 1232 (1986). Here there is no indication that an amendment would be illegal or significantly prejudicial. Our review does not disclose, nor did the trial court describe, any defects in the complaint so substantial as to make successful amendment unlikely. In a case such as this, where the complaint at issue is the initial complaint, where the trial court provided no reasons on the record for its denial of leave to amend, and where there are significant, if not legally sufficient, allegations of facts supporting futility of demand in the complaint, we are constrained to find that the trial court abused its discretion by

denying leave to amend, and thus reverse its order in that respect.

For the foregoing reasons, we vacate the judgment entered January 22, 1996. We reverse that portion of the trial court's order sustaining the demurrer to Count I of the complaint to provide the appellants an opportunity to amend their complaint to address the deficiencies discussed above; we also reverse the trial court's order in all other respects, and we remand the matter for further proceedings consistent with this Opinion.

Judgment VACATED. Order REVERSED. Case REMANDED. Jurisdiction RELINQUISHED.