**J. Daniel HULL, Appellant,**

v.

**ROSE, SCHMIDT, HASLEY & DiSALLE P.C., and Raymond G. Hasley, Richard DiSalle, Samuel L. Douglass, Roger Curran, Edmund M. Carney, Brian W. Ashbaugh, Gail L. Gratton, Susan H. Malone, Carl Andrew McGhee, Keitherley**

**D. Mulvihill, Steven M. Petrikis, Kim D. Eaton, James W. Barson, R. Stanley Mitchell, Raymond N. Baum, and Charles L. Potter, Jr., trading and doing business as Rose, Schmidt, Hasley & DiSalle, a general partnership.**

Superior Court of Pennsylvania.

Argued April 9, 1997.
Filed Sept. 19, 1997.

James B. Lieber, Pittsburgh, for appellant.

Lori D. Mendicino, Pittsburgh, for appellees.

Before CIRILLO, President Judge Emeritus, JOHNSON, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus.

J. Daniel Hull appeals from an order entered in the Court of Common Pleas of Allegheny County sustaining Appellees' (the Partnership's) preliminary objections in the nature of a demurrer and dismissing Hull's complaint. We affirm.

According to Hull's complaint, in 1981 he began working as an associate attorney for Rose, Schmidt, Hasley & DiSalle in the law firm's Washington, D.C. office. Rose, Schmidt, Hasley & DiSalle was, at that time, a general partnership.[1] In May of 1986, while still an associate, Hull voluntarily entered a 28–day rehabilitation program for treatment of alcohol abuse. Hull disclosed his alcoholism to certain partners prior to attending the rehabilitation program and has been sober since his treatment. In 1988, while located in the Washington D.C. office, Hull accepted the Partnership's invitation to

---

1. On or about July 1, 1992 the law firm began doing business as a professional corporation. This change in status, however, has no effect on the present matter.

become a partner. Shortly thereafter, Hull relocated to the firm's Pittsburgh office.

On February 27, 1992, two senior partners asked Hull to withdraw from the firm based on the fact that Hull had "no ties to Pittsburgh" and the partners "perceived real friction [between Hull and] other partners." Hull refused to withdraw. On March 23, 1992, the partnership voted to expel Hull from the firm.[2] Hull alleges he later discovered that other partners had made disparaging comments about his alcoholism, and had stated that he was not acceptable to the firm because he was a recovering alcoholic.

Hull filed a complaint against the Partnership seeking to recover "wage and income loss, compensatory and punitive damages," as well as equitable relief under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq., for unlawful discrimination on the basis of a "disability." In response to Hull's complaint, the Partnership filed preliminary objections in the nature of a demurrer. The basis for the Partnership's preliminary objections was that because Hull was a "partner" of the Partnership, he was an "employer" and not a covered "employee" under the PHRA. The PHRA provides only for an "employee" to bring an action against an "employer" who has engaged in unlawful discriminatory practices. It does not permit an "employer" to allege unlawful discriminatory practices. See 43 P.S. § 955 et seq. The trial court sustained the Partnership's preliminary objections and dismissed Hull's complaint with prejudice. This appeal followed. Hull raises the following issues for our consideration:

(1) Did the trial court err in sustaining defendants' preliminary objections in the nature of a demurrer and dismissing the complaint with prejudice when sections 954 and 955 of the PHRA do not say with certainty whether a partner in a law firm is an "employee" with standing to sue under the PHRA?

(2) Did the trial court act in a manner that was erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law by dismissing the complaint without at least directing the parties to conduct discovery upon the issue of whether plaintiff was in fact treated as an "employee" for purposes of sections 954 and 955 of the PHRA? [3]

(3) Did the trial court's order deny plaintiff equal protection of the laws in violation of the Fourteenth Amendment of the U.S. Constitution?

Our standard of review in an appeal from an order sustaining a preliminary objection in the nature of a demurrer is well-settled.

[O]ur scope of review is plenary[;] preliminary objections which result in the dismissal of the suit or the denial of the claim should be sustained only in cases which are clear and free from doubt. Further, the facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences as may be drawn from such facts.

[Moreover,] preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer. In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is

---

**2.** We note that when a partnership has terminated it ceases doing business; however, when a dissolution of the partnership occurs, as it has in the instant case, it represents the "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on ... of the business." *Canter's Pharmacy v. Elizabeth Assoc.*, 396 Pa.Super. 505, 511, 578 A.2d 1326, 1329 (1990); *see* 15 Pa.C.S.A. § 8353. Dissolution is caused by "the express will of any partner." 15 Pa.C.S.A. § 8353(1)(ii). *See Girard Bank v. Haley et al.*, 460 Pa. 237, 243, 332 A.2d 443, 446 (1975); *Canter's Pharmacy*, 396 Pa.Su-

per. at 510, 578 A.2d at 1329. *See also* 15 Pa.C.S.A. § 8353(1)(iv)(dissolution may be caused by the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the parties).

**3.** In light of our disposition of Hull's first issue, we need not address his second issue, which essentially alleges the same as the first, *i.e.*, that the trial court erred in dismissing the complaint.

any doubt, it should be resolved by the overruling of the demurrer.

*Drain v. Covenant Life Ins. Co.,* 454 Pa.Super. 143, 147, 685 A.2d 119, 121 (1996) (citations omitted); *see Ham v. Sulek,* 422 Pa.Super. 615, 620 A.2d 5 (1993) (question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible).

Hull first argues that the trial court erred in dismissing his complaint because the PHRA does not explicitly state whether a "partner" in a law firm is an "employer" or an "employee" as defined under the Act. He specifically claims that, on the facts averred, the PHRA does not say with certainty that a partner is not entitled to recovery. *Drain, supra; Ham, supra.* The PHRA defines "employer" as follows:

> The term "employer" includes the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth, but except as hereinafter provided, does not include religious, fraternal, charitable or sectarian corporations or associations, except such corporations or associations supported, in whole or in part, by governmental appropriations. The term "employer" with respect to discriminatory practices based on race, color, age, sex, nation origin or non-job related handicap or disability includes religious, fraternal, charitable and sectarian cooperations and associations employing four or more persons within the Commonwealth.

43 P.S. § 954(b). "The term 'employee' does not include (1) any individual employed in agriculture or in the domestic service of any person, (2) any individuals who, as a part of their employment, reside in the personal residence of the employer, (3) any individual employed by said individual's parents, spouse or child." 43 P.S. § 954(c).

As these definitions reflect, the PHRA is silent on whether a partner in a law firm is considered an "employee" or an "employer." Furthermore, our research has uncovered no Pennsylvania case law interpreting the definitions of employer/employee in the context of a general partnership under the PHRA.

As we begin our analysis, we bear in mind the objective of the PHRA, which is expressed in section 953 of the Act as follows: "It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... disability ... and to safeguard their right to obtain and hold employment without such discrimination...." 43 P.S. § 952(b). Guided by this objective, we employ a statutory construction analysis in resolving Hull's first issue.

■ The PHRA must be construed liberally for accomplishment of the purposes thereof. *Jenks v. Avco Corp.,* 340 Pa.Super. 542, 490 A.2d 912 (1985). *See General Elec. Corp. v. Commonwealth Human Rel. Comm'n.,* 469 Pa. 292, 302, 365 A.2d 649, 654 (1976) (after setting forth the purpose of the PHRA, the court noted that it must "adopt a construction which, without doing violence to the language of the statute, best promotes the goal of equal employment opportunities.").

■ According to the Statutory Construction Act, when interpreting a statute, words and phrases in any legislation are to be construed "according to their common meaning and accepted usage." 1 Pa.C.S. § 1903(a); *see Fireman's Fund Insurance Company v. Nationwide Mutual Insurance Company,* 317 Pa.Super. 497, 464 A.2d 431 (1983). Further, "statutes are presumed to employ words in their popular and plain everyday sense and the popular meaning of such words must prevail[.]" *Treaster v. Township of Union,* 430 Pa. 223, 229, 242 A.2d 252, 255 (1968)(citing *Harris–Walsh, Inc. v. Borough of Dickson City,* 420 Pa. 259, 271, 216 A.2d 329, 335 (1966)).

■ Hull has averred in his complaint that he was offered an opportunity to be a partner in the general partnership of Rose, Schmidt, Hasley & DiSalle. He accepted this offer and became one of twenty-two partners in a large firm with offices located in two major cities, Pittsburgh and Washington D.C. As evidenced in his complaint, Hull shared in the firm's profits (e.g., Hull's draw of $5,500.00 per month was increased to $8,250.00 per month in February of 1990),

paid capital into the firm, managed and controlled significant portions of the Partnership's client business, generated new business for the Partnership, helped to develop departments in the firm, acquired voting privileges and, it can be reasonably inferred, was liable for Partnership debt.

Considering the approved usage and plain meaning of the word "partner" in the context of the facts averred, we are persuaded that Hull's unique position, increased earnings, ownership status, and exposure to liability and change in management control, are qualities that are commonly associated and used in conjunction with the term "employer." *Fireman's Fund Ins. Co., supra; Treaster, supra.* Our decision to equate Hull's status as a general partner to that of an employer is bolstered by the federal courts' treatment of the same issue. The Pennsylvania Human Relations Act should be construed in light of " 'principles of fair employment law which have emerged relative to the federal [statute of Title VII of the Civil Rights Act of 1964].' " *Chmill v. City of Pittsburgh,* 488 Pa. 470, 491, 412 A.2d 860, 871 (1980)(quoting *General Electric Corp., supra,* 469 Pa. at 303, 365 A.2d at 654). *See Hoy v. Angelone,* 456 Pa.Super. 596, 691 A.2d 476 (1997) (in interpreting the PHRA, Pennsylvania courts may look to federal court decisions interpreting Title VII); *see also Allegheny Housing v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987); *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 626 A.2d 595 (1993).

In *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir.1987), the Court of Appeals for the Tenth Circuit was confronted with the sole issue of whether federal anti-discrimination laws, including Title VII,[4] protected a general partner of an accounting firm, specifically, whether the partner qualified as an employee under such laws. In *Wheeler,* Plaintiff was employed by an accounting firm for nine years, after which she was made a general partner. Seventeen months later, she was expelled from the firm. The firm moved to dismiss her complaint, citing that Plaintiff was not an employee. The district court denied the motion for summary judgment, concluding that although a partner, Plaintiff was also an employee. The Court of Appeals for the Tenth Circuit reversed, finding that Plaintiff could not be considered an employee and instructing that the complaint be dismissed.

The root of the *Wheeler* court's inquiry focused on statutory interpretation. Initially, the court recognized that it was necessary to remain mindful of the anti-discrimination laws' remedial purposes, that they should be liberally interpreted, but that "such interpretation ... cannot be used as a justification for rewriting the statutes." *Id.* at 262.[5] The court also acknowledged that the definition of employee under Title VII was circular in its description. *Id.* at 263. "Title VII defines employee as 'an individual employed by an employer.' It defines employer as 'a person engaged in an industry affecting commerce who has fifteen or more employees.' " *Id.* (citing 42 U.S.C. § 2000e(b)). In its explicit holding that "bona fide general partners are not employees under the Antidiscrimination Acts," *id.* at 277, the court focused on the fact that Plaintiff's status as partner clearly placed her in a different economic and legal category;[6] the court refused to erase the

**4.** The plaintiff in *Wheeler* also made claims pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, and the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d), a subpart of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219.

**5.** The court identified the purpose of Title VII as follows:

(a) It shall be unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employ-

ment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a).

**6.** Specifically, partnership at the accounting firm consisted of election to the partnership and execution of the firm's partnership agreement; change in compensation from salary to a share of the firm's profits; a contribution to capital and

traditional line between partners and employees. "The central problem with the approach by [Plaintiff] ... is that it either ignores or relegates to insignificance the economic reality of partnership status itself. We view that as a fatal flaw." *Id.* at 274. The court went on to state:

> Employees do not assume the risks of loss and liabilities of their employers; partners do. It is no small thing to be exposed to unlimited liability, to be personally at risk for a partner's mistakes, and to have one's share of profits always potentially conditional upon the outcome of claims, suits, and obligations generated by another partner.... There is simply no equivalent to unlimited liability in any case dealing with the definition of employee, nor is there any equivalent in any understood definition of the term.

*Id.* "When individuals combine to carry on business as partners all these factors introduce complexities and economic realities which are not consonant with employee status." *Id.* at 275. Importantly, in reaching its conclusion, the court discussed the limitations on the Antidiscrimination Acts' remedial goals.

> As we stated at the outset, this is a case of statutory interpretation. There are statutory limitations to the argument that the remedial ends of the Acts justify as means any definition of employee which results in coverage. The underlying theme of the [plaintiff's argument] is that discrimination itself defines the application of the Acts. Thus, all partnerships must be under the Acts.... To suggest that Congress intended the provisions of Title VII [and the other Antidiscrimination Statutes] ... to reach all situations where discrimination may arise in a business setting is to suggest that it enacted these statutes with the intent that they cover all individuals having an economic relationship with a business. This would make employee status largely irrelevant and would essentially

transform the employment discrimination statutes into business discrimination statutes. If this were the case, then we must question why Congress bothered to limit each statute's reach to employment practices. The requirement that the statutes cover only employment situations suggests that Congress perceived a need to limit the application of these statutes. The word "employee," however broadly defined, is still "employee," and circumscribed by meanings reasonably related to that word. Drafters of the statute gave no indication that they were departing from the common discourse of the republic when fashioning a law to be understood by and applied to its citizens.

*Id.* at 275–76 (citations omitted).

Like the plaintiff in *Wheeler,* Hull was a partner in a general partnership. Hull's complaint reflects that he shared in the firm's profits, paid capital into the firm, controlled portions of the Partnership's business, generated new business, and, it can be deduced, was personally liable for the Partnership's debt. Hull exchanged his rights as an employee for the rights and responsibilities of a partner. We are certainly aware of the PHRA's goal of equal employment opportunity and we fully understand the need to construe the Act liberally. To conclude, however, that Hull's position as a general partner constitutes an employee for purposes of the PHRA would essentially serve to blur the line between employer and employee, making employee status largely irrelevant. *Wheeler, supra.* Rather, in order to preserve the delineation established by the legislature in the PHRA, and in anti-discrimination laws in general, we find it necessary to maintain the traditional line between partners (or employers) and employees. As evident from the *Wheeler* decision, Hull's status as a general partner comports with the plain meaning of employer and is inconsistent with the ordinary meaning of employee.[7] Thus, we con-

---

establishment of a capital account; unlimited personal liability for debts of the partnership; right to vote on matters such as amendments to the partnership agreement, approval of mergers, admission of new partners, termination of partners, approval of draws, shares of net profits and special distributions. *Wheeler,* 825 F.2d at 260.

7. In *Hishon v. King & Spalding,* 467 U.S. 69, 79–80, 104 S.Ct. 2229, 2235–36, 81 L.Ed.2d 59 (1984), Justice Lewis Powell summarized the unique nature or a law firm partnership as follows:

clude that Hull's status as a general partner equates him with employer status and, therefore, makes him ineligible to seek relief under the PHRA. *See Burke v. Friedman,* 556 F.2d 867 (7th Cir.1977) (in deciding whether a partner can be considered an employee pursuant to Title VII, the court reasoned that partners manage and control business, share in the profits and losses, and legislative history indicates that "employer" is intended to have its common dictionary meaning; thus, an accounting firm partner cannot be considered an employee).[8] Hull's complaint indicates that his claim may not be sustained and that the law will not permit recovery. *Drain, supra; Ham, supra.*

 In is final claim, Hull asserts an equal protection argument. The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The analogous provision in our state Constitution is as follows:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation.

*Curtis v. Kline,* 542 Pa. 249, 255, 666 A.2d 265, 267–68 (1995) (citations omitted). As the right to employment is not fundamental, and "a standard less than strict scrutiny has

---

I write to make clear my understanding that the Court's opinion should not be read as extending Title VII to the management of a law firm by its partners. The reasoning of the Court's opinion does not require that the relationship among partners be characterized as an "employment" relationship to which Title VII would apply. The relationship among law partners differs markedly from that between employer and employee—including that between the partnership and its associates. The judgmental and sensitive decisions that must be made among the partners embrace a wide range of subjects. the essence of the law partnership is the common conduct of a shared enterprise. The relationship among law partners contemplates that decisions important to the partnership normally will be made by common agreement. *Id.* (Justice Powell, concurring).

**8.** As Hull asserts in his brief, there are other federal court cases which have equated "partner" or a comparable position with "employee." Not only can these cases be distinguished on a factual basis, but we believe that the analysis in *Wheeler* provides the most persuasive reasoning. *See Simpson v. Ernst & Young,* 100 F.3d 436 (6th Cir.1996) (holding that a "partner" in and accounting firm, who brought an action under the Age Discrimination in Employment Act (ADEA), and the Employee Retirement Income Security Act (ERISA), was considered an employee because he was subject to the control of a management committee, which acted in secrecy, and had no bona fide ownership interest, fiduciary relationship, voting right or management control); *Equal Employment Opportunity Commission v. Johnson & Higgins, Incorporated,* 91 F.3d 1529 (2nd Cir.1996) (finding that a director in a private corporation, who brought an action under the ADEA, was considered an employee because he maintained traditional employee duties, devoted most of his time to these traditional duties, reported to a senior board member who issued annual performance reviews, and received compensation determined by a Compensation Committee which was above him in the structural hierarchy); *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1976) (finding that a foreign language broadcaster was an employee within the meaning of Title VII because the service for which she worked had the authority to hire, fire, and control the work she produced). Hull also notes the case of *Birk v. Dobin,* 1996 WL 284995, 1996 U.S.Dist. 7286 (E.D.Pa.1996), where the court decided the issue of whether a discrimination suit could be brought against the partnership as an entity. That case, however, did not address the issue of whether a "partner" is an "employee."

consistently been applied to state legislation restricting the availability of employment opportunities," a rational basis test will be applied. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). A statute is upheld under the rational basis test is there is any rational basis for the classification, *Curtis, supra*, in this case, the employer/employee classification.[9]

As we have previously discussed, the PHRA's reach is limited to employment practices. There are many rational reasons for treating an employer (partner) differently from an employee. *See Wheeler, supra*. Equal protection requires that parties similarly situated be treated alike. *Curtis, supra*. Hull's complaint, however, indicates that he was not classified as an employee in his capacity as a partner. Rather, as a partner/ employer Hull, like other employers, is not protected under the PHRA. The employer/employee classification bears a reasonable relationship to the Act's objective, that is, to eliminate discrimination in employment practices. Thus, there is no merit to Hull's equal protection argument.

Affirmed.

9. In his rather confusing equal protection argument, Hull focuses on the trial court's interpretation of "employer" under the PHRA, rather than on the employer/employee classification under the statute. As evidenced by the case law on this subject, however, it is necessary to examine the statute itself to determine what classification is being made and whether it bears a reasonable relationship to the statute's objective.