## Levin v. Schiffman

*Paul R. Rosen,* for plaintiffs.

*Dion G. Rassias, Patricia C. Lemanowicz* and *Roberto Rivera-Soto,* for defendants.

SHEPPARD JR., *J.,* February 1, 2001—Presently before this court are the preliminary objections of defendants, Heidi Traub Schiffman and Just Kidstuff Inc. to the complaint of plaintiffs, Gloria Levin, in her own right and on behalf of Funds for Schools Inc., Leonard Ross and People Always Support Schools Inc. (PASS)

For the reasons set forth in this opinion, the preliminary objections are overruled in part and sustained in part.

## BACKGROUND

The operative facts, as pleaded in the complaint, are as follows.[1] In 1995, Levin and Ross conceived of a

---

1. The complaint is attached as exhibit 1 to the preliminary objections. References in this opinion to "exhibits" are those exhibits attached to the preliminary objections and/or the complaint.

project to sell coupon books through school districts, particularly the Philadelphia School District, in order to raise funds to benefit individual schools and school projects. Compl. at ¶8. Ross approached then Mayor Edward Rendell and then City Council President John Street with the idea of the program, who responded favorably. *Id.* at ¶9. Consequently, Ross and Levin met with Schiffman, who was then operating Kidstuff, a company which produced coupon books for distribution in the Allentown area. *Id.* at ¶11. After several meetings, Levin, Ross and Schiffman agreed to form Funds, a corporation that would be controlled 50 percent by Levin and 50 percent by Schiffman and which would enable the program to operate. *Id.* at ¶12.

In early 1998, Ross met with representatives of the district with regard to the program and a memorandum of understanding was drafted, outlining the terms and conditions of the district's participation in the program. *Id.* at ¶14. In April of 1998, Funds presented the program to the Philadelphia School Board, which indicated its approval. As structured, the program would cause each coupon book to sell for $25, with $10 of the sale price of each book to go to the school involved in the sale, and $2.50 to go to the School District of Philadelphia Special Fund. *Id.* at ¶16. On May 29, 1998, the board adopted a formal resolution approving of the program, but a decision was made to launch the program during the 1999-2000 school year. *Id.* at ¶17.

On May 7, 1999, Schiffman indicated a reluctance to go forward with the program based on the effect it might have on Kidstuff if the program went nationwide. *Id.* at ¶18. Then, on May 10, 1999, Ross wrote to Schiffman to

ask whether or not she was committed to the program and to Funds. *Id.* Shortly thereafter, Schiffman threatened to withdraw from Funds but eventually affirmed her commitment to Ross, Levin, Funds and the program. *Id.* at ¶19. Subsequently, on May 17, 1999, Ross sent Schiffman a memorandum, purportedly summarizing the financial agreement that had been reached between the parties, and to which Schiffman had agreed. *Id.* See also, exhibit A. Then, on May 18, 1999, Ross arranged a press conference, in which then Mayor Rendell announced the program. *Id.* at ¶20.

Thereafter, Schiffman made additional demands on Levin, Ross and Funds with regard to her control of the company's future. *Id.* at ¶21. Specifically, as alleged, "Schiffman unreasonably sought the ability to unilaterally decide to sell Funds and to block any further activities of Funds beyond Philadelphia so that Kidstuff, her own corporation, could instead take advantage of such business opportunities." *Id.* See exhibit B (Schiffman's proposed restructuring of Funds). In addition, on June 30, 1999, Schiffman wrote to Ross and Levin that she would "not hesitate to prevent the sale of coupon books or coupon related items that [Levin, Ross and Funds] develop, for the school district, or for any other purpose." *Id.* at ¶22. Consequently, Levin, Ross and Funds were forced to notify the district that they would be unable to produce the coupon book for the 1999-2000 school year. *Id.* at ¶23.

As a result of the seemingly unresolvable dispute with Schiffman and Kidstuff, in the fall of 1999, Levin formed PASS in order to carry out the original program of selling coupon books and raising funds for the district. *Id.* at

¶24. Ross and Levin, then, on behalf of PASS, met with and eventually contracted with a different manufacturer of coupon books to produce the coupon book to be sold through the district. *Id.* at ¶25. From the summer of 1999 through the spring of 2000, Levin, Ross and PASS worked to regain the support of the board, the district and the other supporters of the program who had become disenchanted with it as a result of Funds' failure to proceed with it. *Id.* at ¶26. In June of 2000, the board approved a proposal by PASS for the sale and distribution of coupon books through and for the benefit of the district. *Id.* at ¶27. See exhibit C. Thereafter, Schiffman and Kidstuff purportedly engaged in wrongful activity in order to interfere with the district's relationship with PASS and to harm the reputation of plaintiffs. *Id.* at ¶28. Specifically, Schiffman allegedly contacted the district to threaten litigation against it and the City of Philadelphia and to disparage the business reputations of PASS, Levin and Ross. *Id.*

With this background, on August 3, 2000, plaintiffs filed its complaint against Schiffman and Kidstuff, setting forth counts for breach of fiduciary duty, breach of contract, declaratory judgment, commercial disparagement and defamation. *Id.* at ¶¶29-62. On August 29, 2000, defendants filed preliminary objections based on the following grounds:

(1) Failure to join the School District of Philadelphia as an indispensable party;

(2) Failure to state a claim upon which relief can be granted under any count of the complaint;

(3) Lack of standing to sue derivatively on behalf of Funds in Counts I, II, V-VII;

(4) Failure to attach the purported contract, in contravention of Rule 1019(h) of the Pennsylvania Rules of Civil Procedure;

(5) Unavailability of punitive damages for breach of contract claim;

(6) Failure to properly aver interest in the action or damages on Ross' part;

(7) Failure to properly verify the complaint; and

(8) Improper venue. Objections at ¶¶23-116.

As discussed below, the objections for failure to join an indispensable party, standing to sue derivatively, improper verification by plaintiff Ross and lack of harm or interest to Ross are overruled. Further, the demurrers to each count of the complaint are overruled (except as to Count II as against Schiffman, which is sustained) and the objection regarding punitive damages as to the breach of contract claim is overruled where the claims are properly characterized as ones for tortious interference with contractual relations.

The objection for failure to attach the purported contract is sustained without prejudice.

The remaining objection regarding improper venue requires a further factual record. Accordingly, this court orders the parties, for a period not to exceed 45 days, to conduct limited discovery and/or depositions regarding the transactions or occurrences giving rise to the cause of action and their connection with Philadelphia County.

## DISCUSSION

### I. *Failure To Join Indispensable Party*

Defendants assert that the Philadelphia School District is an indispensable party to this action because the only contract forming a basis for the action is the alleged agreement between the district and some or all of the plaintiffs and some or all of the defendants to complete the coupon book program. See compl. at ¶¶17, 21, 27. Defendants further argue that the issue of who can complete the coupon book program is central to all of the issues in this case, and that any disposition of the case will prejudice the district without its presence because it will eliminate its contractual ability to choose the party to do the coupon books and will likely cause them to breach a contract with one of the parties. Defs. mem. of law at 8-9. In contrast, plaintiffs argue that the requested declaratory relief will not burden the district nor result in the invalidation of any existing contract; rather, the dispute is between two business partners and the relief sought is a declaration of rights of one party as against another. Pls. mem. of law at 7. This court agrees with the plaintiffs' position on this point.

"An indispensable party is one whose rights or interests are so pervasively connected with the claims of the litigants that no relief can be granted without infringing on those rights or interests." *Hubert v. Greenwald,* 743 A.2d 977, 979 (Pa. Super. 1999) (citing *CRY Inc. v. Mill Service Inc.,* 536 Pa. 462, 468, 640 A.2d 372, 375 (1994)). Absent an indispensable party, any decree or order rendered in a matter is void for lack of jurisdiction. *Id.* at

980. A party may raise this objection at any time during the proceedings and it is not waivable. Pa.R.C.P. 1032;[2] *Church of the Lord Jesus Christ of the Apostolic Faith Inc. v. Shelton,* 740 A.2d 751, 755 (Pa. Commw. 1999). The following factors are used in determining whether a party is indispensable:

"(1) Do absent parties have a right or interest related to the claim?

"(2) If so, what is the nature of that right or interest?

"(3) Is that right or interest essential to the merits of the issue?

"(4) Can justice be afforded without violating the due process rights of absent parties? " *Hubert,* 743 A.2d at 980. (citation omitted)

In deciding this issue, this court's inquiry focuses on "whether justice can be done in the absence of [the district]." *Id.* Therefore, this court must refer to the nature of the claim and the relief sought. *Id.* In addition, a party may be deemed "necessary," if not indispensable, if its presence is essential if the court is to resolve completely

---

2. Pa.R.C.P. 1032 provides, in pertinent part, that:

"(a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except . . . the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim and any other nonwaivable defense or objection . . .

"(b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order . . . that the indispensable party be joined, but if that is not possible, then it shall dismiss the action."

a controversy and to render complete relief. *Pennsylvania Human Relations Comm'n v. School District of Philadelphia,* 167 Pa. Commw. 1, 14, 651 A.2d 177, 184 (1994).

Contrary to the defendants' contentions, none of the allegations in the complaint indicate that the district's rights are so affected that a disposition on the merits would be void absent the district's presence. Rather, the gravamen of plaintiffs' complaint, seeking both monetary and declaratory relief, is that Schiffman and Kidstuff engaged in wrongful activity to prevent the sale of coupon books to the district by Funds, in order that Schiffman and Kidstuff, themselves, could take advantage of this business opportunity. See compl. at ¶¶21-23, 28, 37, 46.

For example, one of the breach of contract counts, Count III of the complaint, involves the alleged "shareholders' agreement" between Levin and Schiffman and only involved the district on a tangential basis. See compl. at ¶¶12, 40-43. This alleged agreement was reached in order to perform the program on the district's behalf. *Id.* Further, the two other breach of contract counts, Counts II and IV of the complaint, allege that defendants wrongfully interfered with Funds' business relations with the district.[3] In addition, Count V for declaratory judgment seeks to declare that "[defendants] have no right, title or interest in, nor any claim or cause to interfere with, the sale of coupon books by plaintiffs through the district" since defendant Schiffman breached the shareholders' agreement. *Id.* at ¶49.

---

3. The specifics of Counts II and IV will be more fully addressed in the "demurrer" section of this opinion.

Admittedly, the district has a contractual interest in the performance of the program. However, the district's interest is not essential to the merits of the case so as to make it indispensable. But see, *E-Z Parks Inc. v. Philadelphia Parking Authority,* 103 Pa. Commw. 627, 632-33, 521 A.2d 71, 73-74 (1987) (holding that Department of Transportation, as the owner of the parcel of land at the heart of the controversy over who would hold the lease for the property, is an indispensable party in action).

In summary, this court finds that the district is not an indispensable party to this action whose rights and interests would otherwise be so intimately connected with the plaintiffs' claims that no relief could be granted without infringing upon the district's rights. The objection for failure to join an indispensable party is overruled.

## II. *Demurrer*

Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure allows for preliminary objections based on legal insufficiency of a pleading or a demurrer. When reviewing preliminary objections in the form of a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa. Super. 2000). Preliminary objections, whose end result would be the dismissal of a cause of action, should be sustained only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). (citation omitted) Moreover,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . .

"Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

However, the pleaders' conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinions are not considered to be admitted as true. *Giordano v. Ridge,* 737 A.2d 350, 352 (Pa. Commw. 1999), *aff'd,* 559 Pa. 283, 739 A.2d 1052 (1999), *cert. denied,* 121 S.Ct. 307 (U.S. 2000). In addition, it is not necessary to accept as true averments in the complaint which conflict with exhibits attached to the complaint. *Philmar Mid-Atlantic Inc. v. York Street Associates II,* 389 Pa. Super. 297, 300, 566 A.2d 1253, 1254 (1989).

Defendants set forth a demurrer to nearly each count of the complaint.[4] In addition, certain of defendants' ar-

---

4. Although defendants do not explicitly object to insufficient specificity in the complaint, pursuant to Pa.R.C.P. 1028(a)(3), they do contend that the complaint is vague and conclusory and lacks any adequate statement of plaintiffs' theory of liability. Defs. mem. of law at 6-8. This court cannot agree with defendants' characterization of the complaint.

Rule 1019(a) requires the plaintiff to state "[t]he material facts on which a cause of action or defense is based . . . in a concise and summary form." Pa.R.C.P. 1019(a). To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are sufficiently specific so as to enable a defendant to prepare its defense. *Smith v. Wagner,* 403 Pa. Super. 316, 319, 588

guments relating to Levin's standing and failure to attach the purported contract are intertwined with their demurrers. This court will address their arguments seriatim.

## A. Levin's Standing To Sue on Behalf of Funds

Defendants first assert that Levin, who made no demand on the board of Funds to sue Schiffman, does not have standing to bring derivative claims "in the right of Funds," in relation to Count I (breach of fiduciary duty), Count II (breach of contract), Count V (declaratory judgment), Count VI (commercial disparagement) or Count VII (defamation).[5] Defendants, therefore, demur to these counts and contend that mere conclusory allegations of futility are insufficient to overcome the demand requirement.

In their complaint, plaintiffs aver that any demand on Funds to bring suit would be futile since Schiffman, who committed the alleged wrongs and allegedly acted in bad faith for her own financial interest, owns 50 percent of Funds and cannot be relied upon for an independent de-

---

A.2d 1308, 1310 (1991). See also, *In re The Barnes Foundation,* 443 Pa. Super. 369, 381, 661 A.2d 889, 895 (1995) ("a pleading should formulate the issues by fully summarizing the material facts, . . . and as a minimum, a pleader must set forth concisely the facts upon which [the] cause of action is based.").

As discussed more fully below, the court finds that the plaintiffs' allegations are sufficiently specific to apprise defendants of the nature of the claims and to enable defendants to prepare their defense.

5. Levin, on behalf of Funds, is the sole plaintiff only in regard to Counts I and II. Counts V-VII are brought by Levin, individually and on behalf of Funds, along with Ross and PASS.

cision to commence an action against herself. Compl. at ¶33. Plaintiffs also allege that "[a]s a result of [Schiffman's] conduct, Funds has suffered irreparable harm and monetary damages" to both its business reputation and its ability to complete the program for the 1999-2000 school year with the district. Compl. at ¶¶23-28 and 32. Despite the allegation of irreparable harm, it appears that plaintiffs are relying on the "futility" exception to the "demand" requirement for bringing a derivative claim and the fact that Funds is a closely-held corporation. See pl. mem. of law at 15-16. Admittedly, the "futility" exception has lost some of its vitality. However, the fact that Funds is a closely-held corporation[6] and the circumstances of this case allow this court to treat the derivative claims as a direct action; thus, exempting plaintiffs from the demand requirement. See American Law Inst., *Principles of Corporate Governance* §7.01(d) (1994).

The general rule for a shareholder's standing to bring a derivative claim requires that demand first be made on the board of directors of the corporation, who then refused or failed to enforce the rights which could be asserted by it. See Pa.R.C.P. 1506; *Drain v. Covenant Life Insurance Co.,* 551 Pa. 570, 580-81, 712 A.2d 273, 278 (1998), *aff'd,* 454 Pa. Super. 143, 685 A.2d 119 (1996); see also, *Garber v. Lego,* 11 F.3d 1197, 1201-1202 (3d

---

6. Closely-held corporations are typically defined as corporations for which there is no public market for shares and, sometimes, no market at all. An alternative and largely co-extensive definition is corporations with few (typically defined as less than 25) shareholders. See *e.g.,* American Law Inst., *Principles of Corporate Governance: Analysis and Recommendations* §1.06 (1994).

Cir. 1993) (applying Pennsylvania law). As described in *Garber,* the demand requirements are imperative because the shareholder's right to act for the corporation is exceptional and arises only on a clear showing of special circumstances. 11 F.3d at 1202 (citing *Wolf v. Pennsylvania R. Co.,* 195 Pa. 91, 95, 45 A. 936, 937 (1900)). The former rule allowed the demand requirements to be excused if the plaintiff-shareholder sufficiently alleged the futility of making a demand on the directors, including allegations that the majority of the board engaged in fraudulent, corrupt, or bad faith acts and were not simply guilty of erroneous judgment. *Drain,* 454 Pa. Super. at 158, 685 A.2d at 127; *Garber,* 11 F.2d at 1203; *Tyler v. O'Neill,* 994 F. Supp. 603, 611 (E.D. Pa. 1998) (applying Pennsylvania law).

In *Cuker v. Mikalauskas,* 547 Pa. 600, 613, 692 A.2d 1042, 1049 (1997), the Pennsylvania Supreme Court adopted the American Law Institute Principles of Corporate Governance (ALI Principles) with respect to standing to maintain a derivative action, but it did not recognize the "futility" exception. Specifically, the *Cuker* court reaffirmed the general rule, requiring plaintiff-shareholder to make demand on the board to institute action before filing derivative claims. *Id.* at 615, 692 A.2d at 1050 (citing ALI Principles §7.03(a)). However, the court excused the demand requirement if the shareholder showed that irreparable injury to the corporation would otherwise result; and, even then, the plaintiff must make demand promptly after filing suit. *Id.,* citing ALI Principles §7.03(b). See also, *Drain,* 551 Pa. at 581, 712 A.2d at 278 (noting that *Cuker* changed the law on demand requirements in derivative actions).

166

At first blush, under *Cuker* and section 7.03 of the ALI Principles, it appears that there is but a single exception to the demand requirement: irreparable injury. Rather, section7.01(d) sets forth a second exception in the demand requirement:

"(d) In the case of a closely-held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." ALI Principles of Corporate Governance, §7.01(d).

Since PECO, the corporation, in *Cuker* was not a closely-held corporation, the court in *Cuker* did not consider or adopt section 7.01 of the ALI Principles. However, the court noted in a footnote:

"Our adoption of [sections 7.02-7.10 and 7.13] is not a rejection of other sections not cited. . . . the entire [ALI Principles] is a comprehensive, cohesive work more than a decade in preparation. Additional sections, . . . particularly procedural ones due to their interlocking character, may be adopted in the future. Issues in future cases or, perhaps, further proceedings in this case might implicate additional sections of the ALI Principles. Courts of the Commonwealth are free to consider other parts of the work and utilize them if they are helpful and appear

to be consistent with Pennsylvania law." *Cuker* at 613 n.5, 692 A.2d at 1049 n.5.

This court finds that section 7.01(d) of the ALI Principles is helpful and consistent with Pennsylvania law and will apply it as an exception to the demand requirement for the closely-held corporation in this case. See *Audio Visual Xperts Inc. v. Walker,* 2000 WL 222152, at *2-3 (Del. Ch. Ct. 2000) (predicting that a Pennsylvania court would apply section 7.01(d) to demand requirement in the context of a closely-held Pennsylvania corporation). Here, it appears that Funds was created for the single purpose of carrying out the program, with Levin and Schiffman each owning 50 percent of the corporation. Compl. at ¶12. It does not appear that Kidstuff or Schiffman will be unfairly exposed to a multiplicity of suits. ALI Principles section 7.01(d)(i). Schiffman is not precluded from bringing a counterclaim against Levin if the facts warrant such a claim. There is no reason to conclude that allowing a direct action would materially prejudice the interests of creditors. *Id.,* section 7.01(d)(ii). And allowing a direct action will not interfere with a fair distribution of the recovery among all interested persons since such recovery can be decided at trial and the named parties seem to be the only interested persons. *Id.,* section 7.01(d)(iii). Further, PASS was allegedly created by Levin and Ross in an attempt to mitigate damages and in order to continue the program on behalf of the district. Compl. at ¶24. Under these circumstances, the court will exercise its discretion and treat all of Levin's "derivative" claims, in Counts I, II, V-VII, as direct claims for which demand is not required. The court, thus, overrules the objections based on lack of standing.

## B. Demurrer to Breach of Contract Claim— Counts II, III and IV

Defendants contend that plaintiffs have failed to allege the necessary elements to establish a claim for breach of contract in Counts II, III and IV of the complaint. To establish a cause of action for breach of contract, the plaintiff must allege: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *CoreStates Bank N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. 1999). Further, "[w]hile not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.* at 1058.

In Count III of the complaint, plaintiffs allege in pertinent part:

"(40) On or about May 17, 1999, Levin and Schiffman entered into a shareholders' agreement, the material terms of which are set forth in exhibit 'A' hereto.

"(41) Levin has performed all of the terms and conditions required of her pursuant to the shareholder[]s agreement, except as to those terms and conditions performance of which has been excused.

"(42) In or about June 1999, Schiffman breached the shareholders' agreement by, among other things, effectively withdrawing from Funds at a critical time period in 1999, and threatening, without cause or justification, litigation with the intention of interfering with the contractual relationship between Funds and the district.

"(43) As a result of the foregoing breaches, Levin has been damaged in an amount to be determined at trial, but in any event in excess of $50,000." Compl. at ¶¶40-43.

Plaintiffs also allege that Levin, Ross and Schiffman agreed to form Funds in order to carry out the program. *Id.* at ¶12. Further, as alleged, "on May 17, 1999, Ross sent Schiffman a memorandum summarizing the financial agreement that had been reached between the parties, to which Schiffman agreed." *Id.* at ¶19. Finally, as a result of Schiffman's actions, Levin, Ross and Funds were allegedly forced to notify the district that they would not be able to produce their coupon book to be sold during the 1999-2000 school year. *Id.* at ¶23. Accepting all these allegations as true, this court finds that plaintiffs did sufficiently plead the existence of a contract, *i.e.,* the agreement between the named parties to carry out the program, along with Schiffman's alleged breach of that agreement and the resultant damages. The demurrer to Count III is therefore overruled.

However, defendants also contend that plaintiffs failed to attach the writing upon which the purported contract is based, in contravention of Pa.R.C.P. 1019(h). It is true that Pa.R.C.P. 1019(h) requires the pleader to attach a copy of the writing which forms the basis for a claim. Here, plaintiffs allege that exhibit "A" comprises the shareholders' agreement. Upon examination of this document, this court cannot agree with plaintiffs, but rather finds that this exhibit represents a projection of potential sales of coupon books and the potential sale of Funds. Compl. exhibit A. This exhibit does not set forth the terms of the shareholders' agreement upon which plaintiffs are purportedly suing. Therefore, the objections based on failure to attach the writing which forms the basis for the claim is sustained. Plaintiffs must file an amended complaint, which either attaches the actual writing that forms

the basis of their claim(s) or amend their allegations to state whether the contract is, in fact, based entirely or partly on a writing.

As to Counts II and IV, this court will treat these claims as claims for tortious interference with contractual and/or business relations despite the fact that they are titled "breach of contract" claims. When faced with a conflict between the allegations of a count and the count's title, Pennsylvania courts look at the allegations and not the title. See *e.g., Zernhelt v. Lehigh County Office of Children and Youth Services,* 659 A.2d 89, 90 (Pa. Commw. 1995) (treating a count titled "negligent infliction of emotional distress" as a claim for intentional infliction of emotional distress); *Maute v. Frank,* 441 Pa. Super. 401, 403-404, 657 A.2d 985, 986 (1995) ("since the complaint states a viable mandamus claim, we will treat that portion of the action as such regardless of the fact that the complaint is not titled properly as one involving mandamus."); *Commonwealth ex rel. Saltzburg v. Fulcomer,* 382 Pa. Super. 422, 428, 555 A.2d 912, 914 (1989) (although action was titled as one involving habeas corpus relief, petitioner's action clearly was one for mandamus and was therefore treated as such).

To establish a claim for tortious interference with contract, the plaintiff must plead: "(1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct." *Hennessy v. Santiago,* 708 A.2d 1269, 1278 (Pa. Super. 1998). By definition, a claim for tortious interference requires the

existence of three parties: a tort-feasor who intentionally interferes with a contract between the plaintiff and a third person. *Maier v. Maretti,* 448 Pa. Super. 276, 288, 671 A.2d 701, 707 (1995). The contractual relationship must be between the plaintiff and a party other than the defendant. *Id.* See also, *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.,* 360 Pa. Super. 72, 78-79, 519 A.2d 997, 1000 (1987); Restatement (Second) of Torts §766.

Counts II and IV of the complaint, which are against both Schiffman and Kidstuff, set forth essentially the same allegations, except that Count II is brought by Levin on behalf of Funds and Count IV is brought by Levin, Ross and PASS against both defendants. Plaintiffs do allege that first Funds and then PASS, entered into business relationships with the district to implement the sale of coupon books through the program. Compl. at ¶¶15-17, 26-27. As part of these counts, plaintiffs allege that Schiffman and Kidstuff became aware of Funds' intent to implement the program and the district's approval of the program. *Id.* at ¶¶18, 21, 22, 28, 36, and 45. Plaintiffs also allege that defendants engaged in acts, including the threat of filing litigation, with the intent of interfering with the prospective business arrangements with the district and to extort monies from Levin, Ross and Funds. *Id.* at ¶¶22, 23, 37, and 46. Further, plaintiffs allege that Schiffman and Kidstuff acted "without even a colorable claim of privilege or justification." *Id.* at ¶¶38 and 47. With respect to damages, plaintiffs allege that their business reputations were harmed by defendants and the program could not be completed for the 1999-2000 school year. *Id.* at ¶¶23, 28, 37, and 46. Plaintiffs

request punitive damages with respect to both Counts II and IV.[7]

Accepting these allegations as true, this court finds that plaintiffs have stated the requisite elements for claims for tortious interference with contractual and/or business relations. However, the tortious interference claim in Count II cannot be maintained by Levin on behalf of Funds, as against Schiffman, because Schiffman is a 50 percent shareholder of Funds and would thus be a party to the contract with the district. Nonetheless, the action against Kidstuff, who is not a party to the contract between Funds and the district or the one between PASS and the district, may be maintained. Moreover, Count IV is brought on behalf of Levin, Ross and PASS; and, thus, it may be asserted against both Schiffman and Kidstuff. Therefore, *only* the demurrer to Count II, as against Schiffman, is *sustained.* Otherwise, the demurrer to Counts II and IV is overruled.

### C. Demurrer to Declaratory Judgment Claim—Count V

Defendants contend that plaintiffs have failed to state a claim for declaratory judgment since they failed to ar-

---

7. Defendants demur to the punitive damages claims, asserting that punitive damages are not allowed for a mere breach of contract. This court disagrees since Counts II and IV are more properly characterized as claims for tortious interference with contract for which punitive damages may be asserted. *Amico v. Radius Communication,* January 2000, no. 1793, slip op. at 8 n.7 (Herron, J.) (C.P. Phila. January 9, 2001) (citing *Golumb v. Korus,* 261 Pa. Super. 344, 347, 396 A.2d 430, 431 (1978)).

ticulate the "controversy" at issue and failed to identify the alleged "agreement" which forms the basis of their claim. Defs. mem. of law at 13-14. This court disagrees.

In Count V of the complaint, plaintiffs aver the following:

"(49) An actual controversy has arisen and now exists between plaintiffs and defendants regarding their respective rights, duties and obligations under the shareholders' agreement and with regard to the program in that plaintiffs contend that Schiffman has breached the shareholders' agreement and, further, that Schiffman and Kidstuff have no right, title or interest in, nor any claim or cause to interfere with, the sale of coupon books by plaintiffs through the district or through any other school district in the country, which contentions defendants' [sic] deny.

"(50) Plaintiffs desire a judicial determination of the respective rights and duties of the parties herein with respect to the foregoing. In particular, plaintiffs desire a judicial declaration that defendants have no right, title or interest in, nor any claim or cause to interfere with, the sale of coupon books by plaintiffs through the district or through any other school district in the country.

"(51) Such a declaration is necessary and appropriate at this time in order that plaintiffs may ascertain their rights and duties with respect to the claims of Schiffman and Kidstuff so that they may proceed with and fulfill their current agreement with the district." Compl. at ¶¶49-51.

These allegations clearly set forth a request that this court declare that Schiffman and Kidstuff have no rights

to the sale of coupon books through the district or any other school district in the country.

Requests for declaratory judgments are governed by the provisions of the Declaratory Judgments Act. 42 Pa.C.S. §§7531-7541. Though the Act is liberally construed, the court's ability to issue a declaratory judgment is limited to issues that are ripe for judicial determination. There must be the presence of an actual case or controversy. *Pennsylvania State Lodge, Fraternal Order of Police v. Commonwealth*, 692 A.2d 609, 613 (Pa. Commw. 1997). Declaratory judgments may not be obtained as a matter of right. *Id.* Rather, it is in the court's discretion whether to exercise jurisdiction over a declaratory judgment proceeding. *Id.*

Here, accepting plaintiffs' allegations as true for purposes of a demurrer, it is clear that there is an actual controversy at issue—determining who may sell coupon books through the district—and not merely an anticipated or potential controversy. Therefore, this court may properly consider plaintiffs' request for declaratory relief. The demurrer to Count V is overruled.

### D. Demurrers to Count VI for Commercial Disparagement and Demurrer to Count VII for Defamation

In support of its demurrer to both Counts VI and VII, defendants argue that plaintiffs have not identified the substance of the alleged disparaging or defamatory statements; that the statute of limitations bars plaintiffs' defamation claims which pertain to statement(s) made in May of 1999; and that plaintiffs do not allege to whom the

alleged disparaging statements were made, when they were made or the specific pecuniary loss experienced. Defs. mem. of law at 15. Because a statute of limitations defense may not be raised by preliminary objection,[8] this court will consider only the insufficient specificity argument in relation to the demurrers to Counts VI and VII.

To establish a cause of action for commercial disparagement, the plaintiff must allege and ultimately prove: (1) that the disparaging statement of fact is untrue or that the disparaging statement of opinion is incorrect; (2) that no privilege attaches to the statement; and (3) that the plaintiff suffered a direct pecuniary loss as the result of the disparagement. *Menefee v. Columbia Broadcasting System Inc.,* 458 Pa. 46, 53-54, 329 A.2d 216, 219-20 (1974). See also, *SNA Inc. v. Array,* 51 F. Supp.2d 554, 565 (E.D. Pa. 1999) (applying Pennsylvania law).

Similarly, a cause of action for defamation requires that the plaintiff allege: "(1) that the communication was defamatory; (2) that the defendant published the communication; (3) that it applied to the plaintiff; (4) that

---

8. A party may assert the defense of statute of limitations only in a responsive pleading as new matter and not in a preliminary objection. Pa.R.C.P. 1028(a)(4), note; Pa.R.C.P. 1030(a). See also, *Holl & Assocs. v. 1515 Market St. Assocs.,* May 2000, no. 1964, slip op. at 3 (C.P. Phila. August 8, 2000) (Herron, J.) (overruling preliminary objection based on statute of limitations).

Parenthetically however, recent case law has instructed that the statute of limitations is two years for commercial disparagement. *Pro Golf Manufacturing Inc. v. Tribune Review Newspaper Co.,* 761 A.2d 553, 556 (Pa. Super. 2000). Thus here, the claim for commercial disparagement would not necessarily be barred based on the facts alleged in the complaint.

the recipient understood the defamatory meaning of the communication; (5) that the recipient understood that it was intended to be applied to the plaintiff; (6) that the plaintiff suffered special harm as a result of the publication; and (7) that the defendant abused a conditional privilege." *Jaindl v. Mohr,* 432 Pa. Super. 220, 229, 637 A.2d 1353, 1358 (1994). (citation omitted) Plaintiffs must also allege to whom the alleged defamatory statement was published. *Suppan v. Kratzer,* 660 A.2d 226, 229 (Pa. Commw. 1995).

Though the two tort actions are similar, each protects different and distinct interests. *Pro Golf Manufacturing Inc. v. Tribune Review Newspaper Co.,* 761 A.2d 553, 556 (Pa. Super. 2000) (citing *Menefee,* 458 Pa. at 52, 329 A.2d at 219). The tort of defamation seeks to protect against damage to one's reputation, while the tort of commercial disparagement protects one's economic interest against pecuniary loss. *Id.*

In Count VI for commercial disparagement, plaintiffs allege that, from May 1999 to the present, Schiffman and Kidstuff have made false and disparaging statements of fact claiming that Funds and PASS are unable and incapable of producing, distributing and selling coupon books through the district. Compl. at ¶53. Plaintiffs also allege that both defendants have made such disparaging statements without any colorable claim of privilege and that plaintiffs have suffered monetary damages as a result. *Id.* at ¶¶54-55. Accepting these allegations as true for purposes of a demurrer, this court finds that plaintiffs have sufficiently pled the requisite elements for a cause of action for commercial disparagement. *Menefee,* 458 Pa. at 53-54, 329 A.2d at 219-20. In addition, plain-

tiffs sufficiently allege the substance of the disparaging statements that relate the purported inability of Funds and PASS to perform the program. These allegations are sufficient to enable defendants to prepare a defense.

Further, plaintiffs adequately state a cause of action for defamation. Specifically, plaintiffs allege that Schiffman and Kidstuff, from May of 1999 to the present, have made and published false and untrue statements of fact to Jackie B. Sparkman, Esquire, among others, relating that Levin, Ross, Funds and PASS had misappropriated defendants' trade secrets and proprietary information and were thus guilty of deceit, dishonesty and reprehensible conduct. Compl. at ¶58. Plaintiffs also allege that third parties, including Jackie B. Sparkman heard and understood these statements to be defamatory and to apply to the plaintiffs. *Id.* at ¶59. Further, plaintiffs allege that they have suffered actual monetary damages, including loss of revenues from the sales of coupon books, as a result of the defamatory statements, which defendants made without any claim of privilege or justification. *Id.* at ¶¶60-61. These allegations, on their face meet the requisite elements for stating a cause of action for defamation under Pennsylvania case law. *Jaindl,* 432 Pa. Super. at 229, 637 A.2d at 1358. In addition, when read in the context of the entire complaint, the allegations in Count VII are sufficiently specific to enable defendants to prepare their defense.

For these reasons, the demurrers to Counts VI and VII are overruled.

### III. *Improper Verification*

Defendants object that the complaint is not properly verified by plaintiff Ross because plaintiffs do not and cannot allege the existence of a contract to which Ross and defendants are parties or to which he has an enforceable interest, and plaintiffs' defamation claims do not specifically allege a defamatory statement made about Ross. Defs. mem. of law at 16-17. Defendants, however, fail to cite any authority to support this objection. This court finds this objection meritless.

First, Rule 1024(c) of the Pa.R.C.P. provides in pertinent part that "[t]he verification shall be made by one or more of the parties filing the pleading . . . ." Ross is explicitly named as a plaintiff in this action. Compl. at ¶3. Specifically, Ross is included as a plaintiff in Counts IV and VII of the complaint. Moreover, Ross allegedly contributed to the idea of the program and is alleged to have been involved in nearly every aspect of the program, as well as each transaction which gave rise to plaintiffs' claims. *Id.* at ¶¶8-14, 19-28. In addition, the defamatory statements were alleged to have been made in relation to Ross, along with the other plaintiffs. *Id.* at ¶58. At this stage of the proceedings, this court concludes that it would be inappropriate to dismiss Ross as a plaintiff. The court also finds that the verification was not improper.[9] The objections to improper verification and

---

9. Even if the verification were defective, such a defect is completely technical and may be cured by the plaintiffs. See *Mellon Bank N.A. v. Maris Equipment Company Inc.,* March 2000, no. 2039, slip op. 3-4 (C.P. Phila. July 26, 2000) (Herron, J.) (stating that "courts should not be astute in enforcing technicalities to defeat apparently

for a failure to properly aver damages on Ross' part or his interest in the action are therefore overruled.

## IV. *Improper Venue*

Lastly, defendants argue that under both the venue rules for individuals and those for corporations, set forth in Pa.R.C.P. 1006 and 2179, respectively, the complaint fails to properly allege a cause of action arising in Philadelphia County and that no basis for venue exists in Philadelphia since defendants reside in Lehigh County. Defs. mem. of law at 17-18. In addition, defendants specifically assert that this matter should be transferred to Lehigh County, pursuant to Pa.R.C.P. 1006(d) because Kidstuff's principal place of business is in Allentown, Lehigh County, Schiffman resides in Lehigh County, and a majority of witnesses, documents and other discovery relating to plaintiffs' claims are located in Lehigh County. Objections at ¶¶111-13.

Rule 2179 provides that an action may be filed against a corporation in "a county where a transaction or occurrence took place out of which the cause of action arose." Pa.R.C.P. 2179(a)(4). Similarly, Rule 1006(a), governing venue for individuals, provides that:

"(a) Except as otherwise provided by subdivisions (b) and (c) of this rule, an action against an individual may be brought in and only in a county in which the individual may be served *or* in which the cause of action arose *or* where a transaction or occurrence took place

---

meritorious claims.") (quoting *Lewis v. Erie Insurance Exchange,* 281 Pa. Super. 193, 199, 421 A.2d 1214, 1217 (1980)). (citations omitted)

out of which a cause of action arose . . . ." Pa.R.C.P. 1006(a). (emphasis added)

Here, the complaint explicitly alleges that "[t]he transaction and occurrences giving rise to the instant action occurred in the Commonwealth of Pennsylvania, Philadelphia County." Compl. at ¶7. Further, the gravamen of the complaint is that Schiffman and Kidstuff engaged in wrongful activity to prevent plaintiffs from selling coupon books through the School District of Philadelphia, in order that Schiffman and Kidstuff could take advantage of this business opportunity themselves. See compl. at ¶¶21-23, 28, 37 and 46.

As the moving party, defendants bear the burden of supporting their claim of improper venue. *Gale v. Mercy Catholic Medical Center Eastwick Inc., Fitzgerald Mercy Division,* 698 A.2d 647, 652 (Pa. Super. 1997) (the moving party has the burden of showing that the original choice of venue is improper); *Liggitt v. Liggitt,* 253 Pa. Super. 126, 131, 384 A.2d 1261, 1263-64 (1978). Here, defendants have set forth no documentation supporting their objection(s) to venue. Moreover, defendants rely upon *Forman v. Rossman,* 449 Pa. Super. 34, 38, 672 A.2d 1341, 1342 (1996) and *In re Paoli Railroad Yard PCB Litigation,* 6 D.&C.4th 228, 233-34 (C.P. Phila. 1990), *aff'd,* 137 Pa. Commw. 220, 585 A.2d 608 (1991), *appeal denied,* 529 Pa. 660, 604 A.2d 251 (1991), for the proposition that the court has discretion to change venue on account of the overburdened Philadelphia court system. However, the Pennsylvania Supreme Court in *Cheeseman v. Lethal Exterminator Inc.,* 549 Pa. 200, 212-13, 701 A.2d 156, 162 (1997), overruled both these cases when it held that the trial court, even if congested, must

give deference to the plaintiff's choice of forum in ruling on a petition to transfer. Such petition should not be granted unless defendants can show, "through detailed information in the record, that the plaintiffs' choice of forum is oppressive or vexatious to the defendant." *Id.* at 214, 701 A.2d at 162.

These defendants have not made such a showing.[10] They, at best, have created an issue of fact as to whether the transactions or occurrence giving rise to the cause of action did, in fact, happen as plaintiffs allege. Under Pa.R.C.P. 1028(c)(2), "if an issue of fact is raised, the court shall consider evidence by depositions or otherwise." See also, *Chester Upland School District v. Yesavage,* 653 A.2d 1319, 1325 (Pa. Commw. 1994). Therefore, the court will hold the objection asserting improper venue and the petition to transfer under advisement for 60 days, so that within 45 days, the parties may conduct discovery and depositions pursuant to Pa.R.C.P. 206.7 and 4007.1.

## CONCLUSION

For the reasons set forth, the objections based on failure to join an indispensable party, standing to sue derivatively, improper verification, and lack of harm or interest to plaintiff Ross are overruled. The demurrer to

---

10. From the arguments set forth in defendants' memorandum of law, it is unclear whether they are asserting that the matter should be transferred to Lehigh County because of forum non conveniens or because venue is improper and may not be asserted in Philadelphia County for reasons of record. While this court may need to address both assertions, additional factual evidence must be presented before the court can decide either issue.

each count of the complaint and to the demand for punitive damages are also overruled, except the demurrer to Count II as against Schiffman, which is sustained.

The objection for failure to attach the purported contract is sustained without prejudice. Plaintiffs may file a copy of this contract or amend their pleading to reflect why no such copy was attached.

The remaining objection regarding improper venue requires further factual determination. Accordingly, this court is ordering the parties, for a period not to exceed 45 days to conduct discovery and depositions regarding the transactions or occurrences giving rise to the cause of action and their connection with Philadelphia County. Upon the receipt of this additional information, this court will rule on the outstanding objection under advisement.

## ORDER

And now, February 1, 2001, upon consideration of the preliminary objections of defendants, Heidi Traub Schiffman and Just Kidstuff Inc., to the complaint of plaintiffs, Gloria Levin, Funds for Schools Inc., Leonard Ross and People Always Support Schools Inc., the plaintiffs' responses in opposition thereto, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that:

(1) The preliminary objections for failure to join an indispensable party, Levin's standing to sue derivatively, improper verification by Ross and failure to aver that Ross has an interest or suffered damages in this action are overruled;

(2) The preliminary objections setting forth a demurrer to each count of the complaint and to the demand for punitive damages are overruled, except the demurrer to Count II as against Schiffman, which is sustained;

(3) The preliminary objections for failure to attach the purported contract, in contravention of Pa.R.C.P. 1019(h), is sustained without prejudice and plaintiffs are allowed to file a copy of this contract or to amend their pleading to reflect why no such copy was attached.

(4) The preliminary objections asserting improper venue will be held under advisement for 60 days. Within 45 days, the parties shall complete limited discovery and/or take depositions pursuant to Pa.R.C.P. 206.7 and 4007.1, in order to resolve the factual questions regarding where the transactions or occurrences took place that give rise to the cause(s) of action;

(5) After the 45th day (March 19) but on or before the 60th day (April 2), the parties shall file with this court:

"(a) the purported contract upon which plaintiffs are suing and/or an amended pleading in accordance with paragraph three of this order; and

"(b) briefs offering any further argument and referencing the depositions or other relevant evidence on the issue of proper venue."